Present: Carrico, C.J., Lacy, Hassell, Keenan, Koontz, and
Kinser, JJ., and Whiting, Senior Justice

HOFFMAN FAMILY, L.L.C.
                                        OPINION BY
v.  Record No. 981302      JUSTICE LAWRENCE L. KOONTZ, JR.
                                      April 21, 2000
MILL TWO ASSOCIATES PARTNERSHIP, ET AL.

            FROM THE CIRCUIT COURT OF THE CITY OF ALEXANDRIA
                        John E. Kloch, Judge


     In this appeal, we first consider whether a proposed land
development had advanced to a point sufficient to permit the
chancellor to issue a declaratory judgment construing a
restrictive covenant burdening a portion of the land to be
developed, and if so, whether the chancellor correctly
determined that the proposed development did not violate that
restrictive covenant.

                            BACKGROUND

     The central focus of this appeal is a restrictive covenant
in a December 11, 1989 deed between Hubert N. Hoffman and Peggy
L. Hoffman, husband and wife and predecessors in interest in
Hoffman Family, L.L.C.,[1] and Mill Two Associates Partnership

---

[1]Although not evidenced in the record, it is undisputed that
the Hoffmans transferred their interest in this covenant to this
limited liability corporation prior to the initiation of the
suit for declaratory judgment from which this appeal arises.
Because the interests of the Hoffmans and the successor
corporation are identical, we will hereinafter refer to

(Mill Two) recorded in the land records of the City of Alexandria on December 12, 1989. By that deed, Hoffman conveyed to Mill Two a 3.88-acre tract of land, referenced in the subsequent declaratory judgment suit from which this appeal arises as "Parcel 11," situated at the northwest corner of the intersection of Eisenhower Avenue and Mill Road in the City of Alexandria. The restrictive covenant provides that:

> the property set forth above shall be developed for residential purposes only, not to include motels and hotels, but, which may include up to fifteen percent (15%) of commercial space for residential support. This covenant shall run with the land, but, nothing above withstanding, shall lapse and be no further in force and effect on January 1, 2020.

The conveyance of Parcel 11 to Mill Two by the December 11, 1989 deed was made in conjunction with an "Agreement for the Like-Kind Exchange of Property" executed by Hoffman and Mill Two on November 6, 1989. Pursuant to that agreement, Hoffman subsequently received five separate parcels of land in the City of Alexandria totaling 3.3 acres. Like Parcel 11, these parcels were part of the "Eisenhower Avenue Metro valley," an area of the City of Alexandria undergoing intense redevelopment following the opening of a Washington Metropolitan Area Transit Authority Metrorail line. In addition to parcels already owned,

_____

"Hoffman" whenever referencing the party seeking to enforce this covenant.

these parcels facilitated Hoffman's current and future plans to develop property adjoining the Metrorail line in the City of Alexandria.

Mill Two ultimately sought to develop Parcel 11 in conjunction with Old Town Development Company, L.L.C. (Old Town Development), the owner of two parcels on Mill Road adjoining Parcel 11 along their south and west boundaries. These parcels, referenced in the subsequent declaratory judgment suit from which this appeal arises as Parcel 9 and Parcel 10, total approximately 1.24 acres.[2]

The purpose of combining the land area of the three parcels into a single development was to obtain the benefits of the designation of property in the Eisenhower Avenue Metro valley area as a "Coordinated Development District" under the City of Alexandria's zoning ordinances. See Alexandria Zoning Ordinance § 5-601, et seq. In testimony during a hearing on the merits of the suit, Kimberly Johnson, chief of the development division of

_____

[2]Also named as respondents in this litigation were Old Town Development's predecessor in interest, another development firm, and a construction firm involved at various points in the joint venture to develop Parcels 9, 10, and 11. These parties were subsequently dismissed from the suit and are not parties to this appeal. Subsequent to the filing of the original declaratory judgment suit, Old Town Development acquired a contract purchase interest in Parcel 11 from Mill Two. Accordingly, Old Town Development is the principal party in interest that seeks to develop these three parcels.

the City of Alexandria Department of Planning and Zoning, explained that Coordinated Development Districts are employed by the City to "encourage higher density development around Metro stations." Essentially, within a Coordinated Development District, the floor area ratio for determining the maximum square footage of permissible development, or "density," for a given parcel of land may be increased by combining its development with that of adjoining parcels. According to Johnson, the parcels of land included in a combined development proposal need not necessarily coincide with the boundaries of lots as reflected in the land or tax records.

By combining the development of Parcels 9 and 10 with that of Parcel 11, the floor area ratio for the combined parcels would be raised from 1.25 to 3.75. Alexandria Zoning Ordinance § 5-602. Moreover, the total density permitted in the development would be based upon the application of the floor area ratio to the combined area of the three parcels, rather than to each parcel individually. In other words, the density of development of one parcel would not be limited based upon its area so long as the total density of development of the three parcels combined did not exceed that allowed under the zoning ordinance.

"Mill Race - Old Town Commons," the development proposed for Parcels 9, 10, and 11, consists of four high rise

4

residential towers, principally located on Parcel 11, and a fifteen story office building located solely on Parcels 9 and 10. A ground level plaza with retail commercial space and parking garages, both below and above ground, connect the five main buildings of the development.

The record shows that efforts were made to coordinate the development of Parcels 9, 10, and 11 with the development of Hoffman's parcels in the Eisenhower Avenue Metro valley. However, because of competing interests, the parties were unable to reach an accord on joint development.

On August 13, 1997, Hoffman filed a bill of complaint seeking a declaratory judgment that the proposed development of Parcels 9, 10, and 11 would violate the restrictive covenant in the December 11, 1989 deed conveying Parcel 11 to Mill Two. Because of changes in ownership of the parcels, see note 2 supra, and the continuing process of obtaining approval from the City of Alexandria for the proposed development, Hoffman filed an amended bill of complaint on October 22, 1997. The gravamen of Hoffman's suit, however, continued to be that the use of the land area of Parcel 11 to increase the density of commercial construction permitted on Parcels 9 and 10 was violative of the restrictive covenant in that this constituted a use of Parcel 11 for other than residential and supporting commercial purposes.

On November 7, 1997, Mill Two filed a demurrer to the amended bill of complaint, asserting that the case was not yet ripe for decision. Mill Two asserted that the plan for development of Parcels 9, 10, and 11 as alleged in the bill of complaint was not sufficiently certain to warrant a declaratory judgment.

On November 14, 1997, Old Town Development filed an answer and cross-bill to the bill of complaint.[3] Old Town Development contended that Hoffman had no standing to challenge the proposed development of Parcels 9 and 10. Old Town Development further contended that Hoffman's suit was an improper attempt to bring "a cloud on the title" of Parcel 11 and sought damages on that account.

Hoffman filed a motion for summary judgment on the cross-bill, contending that a lawsuit could not constitute an improper attempt to cloud a title. On December 23, 1997, the chancellor heard argument on the motion for summary judgment, but declined to rule on the matter and, rather, permitted Old Town Development to file an amended cross-bill. Hoffman then moved the court to dismiss the case, asserting that its bill of

---

[3]The cross-bill was initially styled as a "counterclaim." In this opinion, we will use "cross-bill," the proper term for this type of pleading in a chancery suit. See Rule 2:13 ("Cross-Bill Against Plaintiff").

complaint was premature, and that, but for the filing of the cross-bill, it would have taken a voluntary nonsuit. Old Town Development and Mill Two took the position that the case was ripe for decision in order to resolve the "cloud hanging over us." The chancellor ruled that there was a justiciable controversy and denied Hoffman's motion to dismiss.

On December 30, 1997, Old Town Development filed its amended cross-bill. Included in the relief sought in that pleading was a determination of whether the proposed development of Parcels 9, 10, and 11 would violate the restrictive covenant on Parcel 11.

During the pendency of the proceeding before the chancellor and despite concerns over the failure to coordinate development with Hoffman, on January 24, 1998, the Alexandria City Council approved, subject to certain restrictions, the Coordinated Development District Concept Plan submitted by Old Town Development for Parcels 9, 10, and 11. The approval of the concept plan does not permit the beginning of construction, which requires the further approval of final site plans and the grant of building permits. In addition to approving the concept plan, the City also approved a necessary zoning change and granted a special use permit for traffic management related to the development of phase one of Old Town Commons.

7

Having previously filed a demurrer to the amended cross-bill, on February 18, 1998, Hoffman filed a motion to dismiss its amended bill of complaint or, in the alternative, to be allowed to take a voluntary nonsuit.  Hoffman also filed a motion to dismiss the amended cross-bill.  In each of these pleadings Hoffman again asserted that there was not yet a justiciable controversy between it and Old Town Development, either because Old Town Development had not yet acquired an interest in Parcel 11 or because the plan for development of Parcels 9, 10, and 11 was not yet sufficiently certain to permit a declaratory judgment on the effect of the restrictive covenant.  Old Town Development filed responsive pleadings, with supporting materials, opposing Hoffman's efforts to prevent the chancellor from rendering a judgment on the merits.[4]

A three-day hearing on these issues commenced on February 27, 1998.  The voluminous record of testimony and exhibits that resulted from that hearing need not be summarized here except to the extent that the facts have already been recounted above.  It shall be sufficient to state that Hoffman argued forcefully for

------

[4]As we have previously noted, this change in the essential positions of the parties, whereby Hoffman sought dismissal and Old Town Development sought an adjudication on the merits, resulted from the changes in ownership of Parcel 11 and the continuing process of obtaining approval from the City of Alexandria during the pendency of the suit.

the dismissal of its amended bill of complaint and Old Town Development's amended cross-bill, while maintaining that if the case were ripe for decision, the coordinated development of Parcels 9, 10, and 11 violated the restrictive covenant on Parcel 11 by permitting its land area to be used in augmenting the permissible density of commercial development of the other two parcels. Hoffman also asserted that the proposed commercial retail space on Parcel 11 violated the restrictive covenant because it was not intended for "residential support." Old Town Development presented evidence that it was close to receiving approval to begin construction of the first phase of the development, necessitating a judicial determination of the effect of the restrictive covenant. Old Town Development maintained that its proposed development of the three parcels did not violate that covenant.

On March 31, 1998, the chancellor entered a final decree, which dismissed Hoffman's amended bill of complaint with prejudice and granted judgment for Old Town Development on its amended cross-bill. Specifically, the chancellor ruled "that the development plans of Old Town [Development], as presented in evidence in this proceeding and to the City of Alexandria, do not violate the covenant . . . given by defendant Mill Two . . . to Hoffman." We awarded Hoffman this appeal.

9

DISCUSSION

Hoffman first contends that the trial court erred in dismissing its amended bill of complaint with prejudice and in addressing the merits of the amended cross-bill because no justiciable controversy existed between Hoffman and Old Town Development concerning the proposed use of Parcels 9, 10, and 11. We disagree.

The circumstances under which a circuit court may render a declaratory judgment are provided for by statute and have been frequently addressed in our prior decisions. Under the Declaratory Judgment Act (the Act), Code §§ 8.01-184 through -191, circuit courts have the authority to make "binding adjudications of right" in cases of "actual controversy" when there is "antagonistic assertion and denial of right." Code § 8.01-184; Blue Cross & Blue Shield v. St. Mary's Hospital, 245 Va. 24, 35, 426 S.E.2d 117, 123 (1993); Erie Insurance Group v. Hughes, 240 Va. 165, 170, 393 S.E.2d 210, 212 (1990); Reisen v. Aetna Life & Casualty Co., 225 Va. 327, 331, 302 S.E.2d 529, 531 (1983). The Act does not give trial courts the authority to render advisory opinions, to decide moot questions, or to answer inquiries that are merely speculative. Blue Cross, 245 Va. at 35, 426 S.E.2d at 123; Erie, 240 Va. at 170, 393 S.E.2d at 212; Reisen, 225 Va. at 331, 302 S.E.2d at 531. The Act also is not to be used as an instrument of procedural fencing, either to

10

secure delay or to choose a forum.  Liberty Mutual Insurance Co.

v. Bishop, 211 Va. 414, 419, 177 S.E.2d 519, 522 (1970);

Williams v. Southern Bank, 203 Va. 657, 662, 125 S.E.2d 803, 807

(1962).

The authority to enter a declaratory judgment is

discretionary and must be exercised with great care and caution.

Liberty Mutual, 211 Va. at 421, 177 S.E.2d at 524.  Furthermore,

when the resolution of a disputed fact would be determinative of

a case, rather than a construction of definite stated rights,

status, or other relations, commonly expressed in written

instruments, the case is not appropriate for declaratory

judgment.  Id. at 420, 177 S.E.2d at 523; Williams, 203 Va. at

663, 125 S.E.2d at 807.  Ultimately, however, the Act is

remedial, having the express purpose "to afford relief from the

uncertainty and insecurity attendant upon controversies over

legal rights, without requiring one of the parties interested so

to invade the rights asserted by the other as to entitle him to

maintain an ordinary action therefor."  Code § 8.01-191.  The

Act is to be "liberally interpreted and administered with a view

to making the courts more serviceable to the people."  Id.

Hoffman contends that the limitation of the restrictive

covenant in the December 11, 1989 deed was not ripe for

determination in a declaratory judgment action because Old Town

Development had no vested right to develop Parcels 9, 10, and 11

11

at the time the original action commenced.  Even conceding that the approval of the Coordinated Development District Concept Plan for those parcels occurred prior to the chancellor's rendering judgment, Hoffman contends that it was still purely speculative whether Old Town Development would receive the necessary final zoning and building permit approvals before the right to begin construction would be assured.

With respect to land use issues, it is true that we have at times defined the nature of a declaratory judgment suit in terms of whether the party seeking the judgment has acquired some vested right by virtue of zoning approval and, thus, is entitled to the relief sought.  See, e.g., Town of Stephens City v. Russell, 241 Va. 160, 164, 399 S.E.2d 814, 816 (1991).  However, we have never held that a party must establish a vested right, in the form of governmental approval to proceed with development, before obtaining a declaratory judgment on the issue whether some private right would bar that development.

While we can envision cases where the proposed development of property would be so speculative and indefinite as to not rise to the level of a justiciable controversy, such is not the case here.  The record shows that Mill Two and Old Town Development have taken substantial steps, with significant financial expense, in developing specific plans for the development of residential and commercial buildings on Parcels

12

9, 10, and 11. From the detail and scale of those plans, it is certain that governmental approval of the density of the commercial portion of that development will require the increased floor area ratio provided by treating the three parcels as part of a coordinated development. Thus, while those plans may undergo revision prior to Old Town Development receiving final approval to begin construction, nothing in the record suggests that those plans would be altered so radically as to render speculative the central issue raised in this declaratory judgment suit. Moreover, without a judicial resolution of the effect of the restrictive covenant in question the parties would be left without relief from the uncertainty and insecurity attendant upon the continuing controversy of their legal rights with regard to this covenant. Accordingly, we hold that, on the specific facts of this case, a justiciable controversy existed at the time Hoffman filed the initial bill of complaint, and that the chancellor properly exercised his jurisdiction thereafter in rendering judgment to resolve that controversy.

We now consider Hoffman's contention that the chancellor erred in finding that the development proposed for Parcels 9, 10, and 11 did not violate the restrictive covenant in the December 11, 1989 deed. The essence of Hoffman's contention in this regard is that the covenant restricts not merely the uses

13

that may be made upon Parcel 11, but also the uses that may be made of Parcel 11. Hoffman first asserts that the language of the deed is unambiguous and, thus, the chancellor should have applied its plain meaning "in light of the circumstances at the time of its creation." Hoffman then asserts that under those circumstances in this case, the terms "property" and "developed" in the phrase "the property set forth above shall be developed for residential purposes only" in the restrictive covenant are terms of art which should be given the meaning intended by the parties as evidenced by their dealings. That meaning, Hoffman further asserts, is that "property" refers to the boundaries of a parcel of land and to all "[t]he bundle of rights attaching to [land] . . . which includes the right of development," and "developed" refers to "planned unit developments" of the type contemplated in a Coordinated Development District or under a similar zoning scheme. Thus, Hoffman concludes that the covenant restricts the use of the development rights attached to Parcel 11 in the proposed development of Parcels 9, 10, and 11 as one tract of land. We disagree with Hoffman.

It is the well settled rule of this Commonwealth that if the language in a deed is clear, unambiguous, and explicit, a court called upon to construe such language should look no further than the four corners of the deed itself. Irby v. Roberts, 256 Va. 324, 329, 504 S.E.2d 841, 843 (1998). Thus,

14

contrary to Hoffman's contention, parol evidence of "the circumstances at the time of [the deed's] creation" is not to be considered in giving effect to the clear, unambiguous, and explicit language of the deed. Daugherty v. Diment, 238 Va. 520, 525, 385 S.E.2d 572, 574 (1989).

The plain meaning of the language emphasized by Hoffman does not support the broad construction of the terms "property" and "developed" that Hoffman asserts. Here the term "property" is modified by the phrase "set forth above." This is clearly a reference to the physical description of the property earlier in the deed. Similarly, the term "developed" must be read in the context of the language that both precedes and follows it. When so read, the clear, unambiguous, and explicit language of the covenant restricts the development that may occur on Parcel 11 to residential uses, excluding hotels and motels, but permitting a limited amount of supporting commercial uses. Nothing in this language imposes a limitation on Parcel 11 being developed in conjunction with other parcels in the Coordinated Development District. While we agree that Hoffman could have drafted the covenant to apply to "development rights" related to "planned unit developments," it simply failed to do so with the language of this covenant.

Finally, Hoffman contends that the chancellor erred in failing to find that the retail commercial space included in the

15

proposed residential development of Parcel 11 violates the restrictive covenant.  Hoffman does not contend that the amount of retail commercial space exceeds the fifteen percent limitation of the restrictive covenant.  Rather, it contends that under the development proposal the retail commercial space "is intended to serve the entire local region."  Thus, Hoffman contends that the scope of the proposed retail commercial development exceeds that contemplated by the phrase "for residential support" in the restrictive covenant.

The phrase "commercial space for residential support" clearly imports that the retail commercial space should benefit the residential development of Parcel 11.  Nothing in that language suggests, however, that the customer-base of the retail commercial space must be restricted to the residents of that development.  It is, therefore, not inconsistent with the language of the covenant that the retail commercial space permitted as part of the development of Parcel 11 may also serve the occupants of the adjoining parcels or those of the surrounding environs so long as its purpose does not exclude providing retail commercial support to the residential development of Parcel 11.

The chancellor found that there was a lack of "persuasive evidence that the [retail commercial space] is particularly oriented to support the commercial buildings as opposed to the

16

residential buildings." When the chancellor hears evidence <u>ore</u> <u>tenus</u>, his decree is entitled to the same weight as a jury verdict, and we are bound by the chancellor's findings of fact unless they are plainly wrong or without evidence to support them. <u>Rash v. Hilb, Rogal & Hamilton Co.</u>, 251 Va. 281, 283, 467 S.E.2d 791, 793 (1996). Additionally, we review the evidence and all reasonable inferences fairly deducible therefrom in the light most favorable to the prevailing parties below. <u>Id.</u> Applying that standard, we cannot say that the chancellor's determination that the proposed retail commercial space did not violate the restrictive covenant was in error.

CONCLUSION

For these reasons, we find no error in the chancellor's declaratory judgment that the proposed development of Parcel 11 in conjunction with Parcels 9 and 10 will not violate the restrictive covenant in the December 11, 1989 deed. Accordingly, that judgment will be affirmed.

<u>Affirmed</u>.