Present:  All the Justices

JOYCE GREEN, ET AL.

v.  Record No. 032106  OPINION BY JUSTICE CYNTHIA D. KINSER
                                      June 10, 2004
GOODMAN-GABLE-GOULD COMPANY,
INC., ET AL.

              FROM THE CIRCUIT COURT OF FAIRFAX COUNTY
                    Leslie M. Alden, Judge


     In this appeal, we address the appropriate use of

declaratory judgments.  Because we conclude that the

declaratory relief requested in this action was a

determination of a disputed issue rather than an

adjudication of the parties' rights, we will reverse the

judgment of the circuit court granting declaratory relief.

                MATERIAL FACTS AND PROCEEDINGS

     A residence owned by Joyce E. Green and John W. Gural

(collectively, the "Homeowners") was destroyed by fire.  A

few days after the fire, the Homeowners decided to engage

the services of Goodman-Gable-Gould Company, Inc. ("GGG"),

a public insurance adjusting company, to assist them in

processing their fire loss claim with Allstate Insurance

Company ("Allstate"), the company that had issued the

policy insuring the Homeowners' residence and personal

property.  The Homeowners contacted James Goodman, a

representative of GGG who had approached them at the fire

about the services offered by GGG.[1]  Goodman met with the Homeowners at the hotel where they were temporarily staying.  After Goodman explained a proposed contract to the Homeowners, Gural executed the one-page contract.[2]

In pertinent part, the contract provided that the Homeowners were employing "Goodman-Gable-Gould/Adjusters International" to assist them in adjusting the fire loss claim with Allstate.  GGG was "authorized to prepare all necessary inventories and other applicable and/or required instruments to comply with the provisions" of the Allstate policy.  In return for GGG's services, the Homeowners agreed to pay GGG a fee of ten percent of "the gross amount adjusted or otherwise recovered."  The Homeowners also assigned to GGG "all moneys due or to become due from" Allstate to the extent of GGG's fee.  Gural also executed an addendum to the contract that required GGG to waive that portion of its fee relating to rebuilding the Homeowners'

---

[1] According to Goodman, GGG learns about fires, floods, and tornadoes via several paging systems.  Upon receiving a page about a particular disaster, GGG decides whether it is of sufficient magnitude to warrant further investigation.

[2] The parties stipulated at trial that Green was a party to the contract with GGG and had ratified that contract even though she did not sign it.

residence if they elected to retain Rolyn Construction for that purpose.

The Homeowners eventually became dissatisfied with the manner in which GGG was performing its contractual obligations. Consequently, they authorized their attorney to request that GGG withdraw from the adjustment of the fire loss claim with Allstate. A letter to GGG for that purpose stated:

> On behalf of Joyce Green and John Gural, we request that you and your firm withdraw from this matter and allow us to deal directly with Allstate. We appreciate your assistance, and will call you if your assistance is needed again. When our clients' claim is paid, we will notify you and discuss your fee.

Following receipt of the letter, GGG advised the Homeowners' counsel that GGG did not agree with the request to "withdraw." In a letter to Allstate, GGG demanded that Allstate include GGG as an additional payee on any check issued on the Homeowners' claim. GGG also asserted that it had a lien interest in the insurance proceeds and Allstate had an obligation to honor the Homeowners' assignment of funds. This litigation then ensued.

In a motion for judgment naming the Homeowners and Allstate as defendants, GGG sought a declaratory judgment that, _inter alia_, GGG had an interest in the insurance

3

proceeds and that it was owed a fee of ten percent of those proceeds. GGG also sought monetary damages in claims for breach of contract and quantum meruit against the Homeowners, and in a conversion claim against Allstate.

Trial of the case was set to commence on Monday, April 28, 2003. On the Wednesday before the scheduled trial, GGG served a motion to nonsuit all the claims except those seeking declaratory relief and to waive a jury trial on the remaining issues. GGG's stated reason for filing this motion was the fact that Allstate had not yet resolved the Homeowners' fire loss claim. In GGG's view, the proper course of action was to seek only declaratory relief.

The next day, the Homeowners filed a written objection to GGG's request to proceed only with the declaratory judgment claim.[3] The Homeowners stated that they did not object to GGG's nonsuit of the breach of contract and quantum meruit claims but argued that, without those claims, declaratory relief was not appropriate. On the day of the scheduled trial, the Homeowners also filed a motion for summary judgment on the declaratory judgment claim.

---

[3] The Homeowners first raised the issue regarding the appropriateness of declaratory relief in a demurrer to GGG's motion for judgment. They asserted that GGG was seeking a judgment regarding a disputed issue of fact rather than an interpretation of a defined right.

They again asserted that the "declaratory judgment action was appropriate only because it was pursued in conjunction with the substantive counts against the [Homeowners]." Since those claims had been nonsuited, the Homeowners argued that declaratory relief did not lie because GGG was using that procedure to avoid its burden of proof on the nonsuited claims. Thus, the Homeowners asked the circuit court to dismiss the declaratory judgment claim, or alternatively, grant summary judgment in their favor.

After hearing argument on the Homeowners' motion, the circuit court took the matter under advisement and proceeded with a jury trial on the declaratory judgment claim. The court eventually denied the motion for summary judgment during the trial.

At the close of the evidence, the circuit court submitted one factual issue to the jury in an interrogatory: "Do you find that Goodman, Gable, [&] Gould Company rendered substantial performance to the Defendants Joyce Green and John Gural under their November 5, 2001 contract with them prior to the March 22, 2002 letter requesting Goodman, Gable[,] & Gould Company to withdraw from the claim?" The jury answered "Yes" to this interrogatory. The circuit court subsequently entered a

final order granting declaratory relief to GGG and ruling that GGG has an "irrevocable interest" in the insurance proceeds attributable to the Homeowners' claim for the fire loss, that the amount of its interest is ten percent of "the gross amount paid or to be paid by Allstate . . . under the . . . policy of insurance," that the assignment in favor of GGG was valid and enforceable, and that Allstate shall pay directly to GGG all sums that are due or may become due to GGG from the Homeowners' claim.  We awarded the Homeowners this appeal.

ISSUES AND ANALYSIS

The sole issue is whether the circuit court abused its discretion in allowing this case to proceed as a declaratory judgment action after GGG nonsuited its other claims.  Resolution of this issue requires an analysis of the proper function of a declaratory judgment.

The purpose of declaratory judgments, which are "creatures of statutes," see Code §§ 8.01-184 through −191, is to "supplement rather than to supersede ordinary causes of action and to relieve litigants of the common law rule that no declaration of rights may be judicially adjudged until a right has been violated."  Williams v. Southern Bank of Norfolk, 203 Va. 657, 661-62, 125 S.E.2d 803, 806-

6

07 (1962). Declaratory judgments provide relief from the uncertainties stemming from controversies over legal rights, USAA Cas. Ins. Co. v. Randolph, 255 Va. 342, 346, 497 S.E.2d 744, 746 (1998), but they are not to be utilized "as instruments of procedural fencing, either to secure delay or to choose a forum." Williams, 203 Va. at 662, 125 S.E.2d at 807. " 'Where a declaratory judgment as to a disputed fact would be determinative of issues, rather than a construction of definite stated rights, status, and other relations, commonly expressed in written instruments, the case is not one for declaratory judgment.' " Id. at 663, 125 S.E.2d at 807 (quoting 16 Am. Jur., Declaratory Judgments, § 20 at 294-95); accord Hoffman Family, L.L.C. v. Mill Two Associates P'ship, 259 Va. 685, 693, 529 S.E.2d 318, 323 (2000); Randolph, 255 Va. at 346, 497 S.E.2d at 746.

This Court addressed the propriety of using a declaratory judgment action to decide disputed issues in Randolph. There, an employee filed a declaratory judgment proceeding to determine whether his injury arose out of and in the course of his employment. 255 Va. at 344, 497 S.E.2d at 745. We held that declaratory judgment was inappropriate "because the case [did] not involve a

determination of rights, but only involve[d] a disputed issue to be determined in future litigation between the parties, namely, whether [the employee's] injuries arose out of and in the course of his employment."  Id. at 347, 497 S.E.2d at 747.

Similarly, in Williams, a bank filed a petition for declaratory judgment seeking a determination whether it could be held liable for damages in a civil action for malicious prosecution.  203 Va. at 658-59, 125 S.E.2d at 804.  A former customer of the bank had been the subject of 11 indictments for larceny in regard to the financing of motor vehicles by the bank.  Id. at 658, 125 S.E.2d at 804.  After the customer was acquitted of two of the charges, the Commonwealth's Attorney "nol pros[sed]" the remaining nine indictments.  Id.  The customer then threatened 11 malicious prosecution actions against the bank.  Id.  The sole issue presented in the declaratory judgment proceeding was one of disputed fact, whether the bank had made a full and honest disclosure of all material facts within its knowledge to its attorney and the Commonwealth's Attorney. Id. at 663, 125 S.E.2d at 807.  We concluded that declaratory judgment was not appropriate because "[t]he determination of that issue rather than an adjudication of

the rights of the parties was the real object of the proceeding." Id. The bank's use of a declaratory judgment proceeding allowed it to pick the forum and its position at the trial of the cause of action. Id., 125 S.E.2d at 808.

In the declaratory judgment proceeding here, GGG sought to determine whether it had substantially performed its obligations under the contract with the Homeowners, as evidenced by the interrogatory submitted to the jury. Like the employee in Randolph and the bank in Williams, GGG's actual objective in the declaratory judgment proceeding was a determination of that disputed issue rather than an adjudication of the parties' rights. See Williams, 203 Va. at 663, 125 S.E.2d at 807. However, that issue should have been litigated in the context of a breach of contract claim. By nonsuiting that claim and seeking only declaratory relief, GGG did not have to prove, by the greater weight of the evidence, a valid contract, a breach of that contract by the Homeowners, and damages resulting from the breach. See Shenandoah Milling Co. v. Phosphate Products Corp., 161 Va. 642, 650, 171 S.E. 681, 684 (1933).

The jury instructions themselves illustrate this point. The jury was not instructed with regard to the elements that a plaintiff must prove to establish a breach

of contract. Instead, the jury was instructed that the issue in the case was whether GGG had substantially performed its contract with the Homeowners prior to the letter requesting GGG to withdraw from the claim and that GGG had the burden of proof on that issue by the greater weight of the evidence. Nevertheless, the jury was instructed that "[a] party to a contract who prevents the other party from performing his obligations under a contract has breached the contract." Similarly, the circuit court instructed the jury with regard to what constitutes a material breach of a contract and that "[a] breach of a contract cannot be material if the breaching party has rendered substantial performance." In other words, the jury was instructed about various aspects of a breach of contract claim but were never told that GGG had to prove, by the greater weight of the evidence, that the Homeowners breached the contract.

GGG and Allstate, however, assert that declaratory relief was appropriate because it provided all the parties with a determination as to whom the insurance proceeds should be paid once that amount was ascertained.[4] Relying

---

[4] We note that Allstate, in a demurrer to the motion for judgment, took the position that declaratory relief was not appropriate in this case.

10

on our decision in Reisen v. Aetna Life & Cas. Co., 225 Va. 327, 302 S.E.2d 529 (1983), GGG and Allstate contend that, without declaratory relief, neither of them could protect their rights in the face of the competing claims to the Homeowners' unliquidated insurance claim.  We do not agree.

In Reisen, the appellant, Philip O. Reisen, filed a tort action against Jack W. Goins, who had driven his truck into Reisen while he was on a sidewalk.  225 Va. at 329, 302 S.E.2d at 530.  The insurance company providing coverage on Goin's truck advised Reisen and Goins that the loss was not covered under the policy because Goins' act was intentional.  Id. at 330, 302 S.E.2d at 530.  The insurance company then filed a declaratory judgment proceeding seeking a determination that it was not obligated to pay any judgment that might be rendered against Goins.  Id.  The issue on appeal was "whether declaratory judgment [lay] to decide a coverage question when the ultimate issue of fact determining coverage[, whether Goins' act was intentional, was] set for adjudication in a related, pending tort action."  Id. at 329, 302 S.E.2d at 530.

Because of a firm offer from Reisen to settle his claim within the policy limits, the insurance company had a

duty to exercise good faith in dealing with that offer. Id. at 335, 302 S.E.2d at 533. That duty was independent of the insurance company's duty to defend Goins. Id. Thus, we concluded that declaratory relief was appropriate because the parties needed guidance in their future conduct in relation to each other so as to avoid the risk of action that would jeopardize their respective interests. Id.; see also Liberty Mut. Ins. Co. v. Bishop, 211 Va. 414, 421, 177 S.E.2d 519, 524 (1970). Unlike the situation in Williams, declaratory relief regarding the disputed fact in issue in Reisen "resulted . . . in delineation and interpretation of definite rights expressed in the insurance contract." Reisen, 225 Va. at 337, 302 S.E.2d at 534; see also Randolph, 255 Va. at 348, 497 S.E.2d at 747 (unlike Reisen, employee did not seek adjudication of rights).

The same distinction exists between Reisen and the present case. Although GGG asserts that it was seeking a determination of its rights vis-à-vis the Homeowners with regard to the insurance proceeds, GGG was actually asking the circuit court to decide whether the Homeowners had breached the contract between them and GGG. That was an inappropriate use of declaratory judgment.

CONCLUSION

12

A trial court's authority to enter declaratory relief is discretionary.  Randolph, 255 Va. at 346, 497 S.E.2d at 746 (citing Bishop, 211 Va. at 421, 177 S.E.2d at 524).  That discretion must, however, be exercised "with great care and caution."  Id.  For the reasons stated, we conclude that the circuit court abused its discretion by allowing GGG to seek declaratory relief after it nonsuited the other claims.  GGG was using declaratory judgment as an instrument of "procedural fencing."  Williams, 203 Va. at 662, 125 S.E.2d at 807; accord Hoffman, 259 Va. at 692, 529 S.E.2d at 323.  Thus, we will reverse the judgment of the circuit court and dismiss the declaratory judgment action.[5]

Reversed and dismissed.

---

[5] We also find no merit in GGG's motion to dismiss this appeal and will deny that motion.