**IN THE COURT OF APPEALS OF VIRGINIA**

Tuesday the 9th day of June, 2026.

Daniel C. Lavering, Appellant,

 against

University Village Owners Association, Appellee.

**Record No. 1710-24-2**

Upon a Petition for Rehearing
Circuit Court No. CL22-654

Before Chief Judge Decker, Judges Malveaux and Duffan

On May 15, 2026 came the appellant, by counsel, and filed a petition praying that the Court amend the judgement rendered herein on May 5, 2026 and grant a rehearing thereof.

On consideration whereof, the petition for rehearing is granted, the opinion rendered herein on May 5, 2026 is withdrawn, the mandate entered on that date is vacated, and this appeal will be reconsidered by the panel of judges that originally considered the matter. No further briefing or argument is required at this time.

Teste:     A. John Vollino, Clerk

Entered:  *Sophia Nizynska-Schertz*
               Deputy Clerk

# COURT OF APPEALS OF VIRGINIA

**Record No. 1710-24-2**

DANIEL C. LAVERING

v.

UNIVERSITY VILLAGE OWNERS ASSOCIATION

Present: Chief Judge Decker, Judges Malveaux and Duffan

Argued at Richmond, Virginia

Opinion Issued May 5, 2026

**FROM THE CIRCUIT COURT OF ALBEMARLE COUNTY**
Cheryl V. Higgins, Judge

Kyle McNew (John B. Simpson; MartinWren, P.C.; MichieHamlett PLLC, on briefs), for appellant.

Marla J. Diaz (Claudia Lopez-Knapp; Whiteford, Taylor & Preston L.L.P., on brief), for appellee.

**PUBLISHED OPINION BY**
**JUDGE KEVIN M. DUFFAN**

At issue in this case is whether a condominium may amend its condominium instruments to extend the time limit for the expansion of new units with less than unanimity of the owners of the existing units. We conclude that Code §§ 55.1-1916(C)(3) and -1934(B) allow such an amendment to be accomplished through a two-thirds vote. Accordingly, we affirm the trial court's grant of summary judgment in favor of the University Village Owner's Association.

BACKGROUND

In 1991, University Village, Inc., established an expandable condominium[1] in Albemarle County by declaration made subject to the Virginia Condominium Act, Code §§ 55.1-1900 through -1995.[2] As the declarant, University Village reserved the right to expand the condominium at its discretion within seven years from the date of the declaration. If not exercised, the option to expand would "in all respects expire and be of no further force and effect."

Initially, the condominium included 1 building with 46 units, referred to as "Phase I of University Village." Each unit included an "undivided interest in the Common Elements appertaining to that unit."[3] The declaration stated that "the Percentage Interest assigned to each Unit . . . shall change" if new units were added to the condominium. The declaration also stated it could be amended by a "vote of at least 66-2/3% of the Unit Owners."

Within 7 years of the declaration, University Village constructed a "Phase II" building with 48 additional units. The seven-year expansion period provided by the declaration expired in 1998. In 2003, 94.3% of the condominium's unit owners approved an amendment to the declaration to expand the period in which University Village could submit "Phase III" to the condominium regime. The proposal was to authorize a development company that was already under contract to expand the condominium within three and a half years of the amendment.

---

[1] An "expandable condominium" is "a condominium to which additional land may be added in accordance with the provisions of the declaration and" the Virginia Condominium Act. Code § 55.1-1900.

[2] Code §§ 55.1-1990 through -1995 were repealed effective July 1, 2023.

[3] "'Common elements' means all portions of the condominium other than the units." Code § 55.1-1900.

Despite that amendment, no new units were constructed. Daniel Lavering purchased a condominium unit in University Village in 2004.

Due to renewed talk about the proposed "Phase III" expansion, in October 2021 Lavering's counsel sent a letter to the president of the University Village Owner's Association's Board of Directors expressing the view that any expansion required unanimous consent of the unit owners. Referring to the declaration and the 2003 amendment, the Association manager responded that the declaration could be amended by consent of two-thirds of unit owners. In January 2022, the Board adopted a policy resolution "to begin the process of amending the . . . Declaration to allow for construction of Phase 3 units." To that end, the Board "engage[d] the services of [counsel] to draft a proposed declaration amendment to allow development of Phase 3 of the condominium" at an estimated cost of $5,000 to $7,000. At a June 2022 town meeting, unit owners were told that "[p]resent thinking is that this summer could provide time to prepare for a Fall vote of condo unit owners on Phase III" and that the vote would be whether to amend the declaration to submit additional land to the condominium.

Lavering filed a declaratory judgment action against the Association in May 2022. As relevant here, Lavering requested a declaratory judgment that the Association could not expand the condominium without unanimity from the unit owners, alleging that "[t]he Association has asserted and continues to assert that there can be expansion of the Condominium with only a 66 and 2/3 favorable vote by the Unit Owners." The Association denied that allegation in its answer. In April 2023, the Association moved for summary judgment, claiming, among other arguments, that it *could* amend the declaration to extend the declarant expansion period by a two-thirds vote of its unit owners. After a hearing, the circuit court granted the Association's motion.[4] The circuit court found that University Village, Inc. was the declarant, not the

---

[4] The Court also denied Lavering's cross-motion for partial summary judgment.

Association.  In the court's view, the option to expand contained in the declaration was an option to expand "made by the declarant and only by the declarant."  The circuit court then turned to Code § 55.1-1916, finding that it limited the declarant's ability to expand but not the Association's.  As the circuit court explained, it was anticipated that the condominium would "last for a significantly longer period than seven years or ten years" and it was "too narrow an interpretation" of the statute to limit the expansion period.  Consequently, the circuit court found that the expansion period could be "extended by whatever entity is then, at that time, the controlling entity of the additional property and that it can be extended by an amendment at any time to the declaration as there is no time limit in the statute."  Finally, the circuit court found that the amendment could be approved by two-thirds support of the unit owners.  Lavering moved for reconsideration, which the trial court denied.

Lavering also moved for sanctions, contending that the Association had acted in bad faith by denying its two-thirds position in its answer and then taking that position in its motion for summary judgment.  Lavering claimed that the Association's tactic resulted in unnecessary and costly litigation and specifically asserted that he incurred at least $40,000 in unnecessary attorney fees and costs during discovery because of the Association's denials.  Although finding "questionable reasons" for the Association's denials, ultimately the circuit court denied the motion for sanctions, finding no bad faith because there is a difference between expanding the condominium and extending the right to expand.  The circuit court also found that the issues "did not impact [Lavering's] analysis of this case overall."

The Association requested attorney fees of $126,756.97 as the prevailing party under Code § 55.1-1915.  The trial court awarded the Association $81,223 in attorney fees.  Lavering appeals.

ANALYSIS

A.  The Association's Threshold Arguments

As an initial matter, the Association argues that Lavering's lawsuit is premature because the Association has not yet presented a proposal for expansion to the condominium's unit owners.  "[T]he Declaratory Judgment Act provides a 'procedural remedy for the unripe, but legally viable, cause of action'" and "afford[s] 'relief from the uncertainty and insecurity attendant upon controversies over legal rights, without requiring one of the parties interested so to invade the rights asserted by the other as to entitle him to maintain an ordinary action.'"  *Morgan v. Bd. of Supervisors*, 302 Va. 46, 68-69 (2023) (first quoting *Cherrie v. Va. Health Servs., Inc.*, 292 Va. 309, 318 (2016); and then quoting *Hoffman Fam., L.L.C. v. Mill Two Assocs. P'ship*, 259 Va. 685, 693 (2000)); *see* Code §§ 8.01-184 through -191.  A circuit court may issue a declaratory judgment only in cases of "actual controversy."  *Martin v. Garner*, 286 Va. 76, 82 (2013).  "The General Assembly created the power to issue declaratory judgments to resolve disputes 'before the right is violated.'"  *Charlottesville Area Fitness Club Operators Ass'n v. Albemarle Cnty. Bd. of Supervisors*, 285 Va. 87, 98 (2013) (quoting *Patterson v. Patterson*, 144 Va. 113, 120 (1926)).  "If there is no actual controversy between the parties regarding the adjudication of rights, the declaratory judgment is an advisory opinion that the court does not have jurisdiction to render."  *Id.*  An actual controversy is based upon an "actual antagonistic assertion and denial of right."  *Lafferty v. Sch. Bd. of Fairfax Cnty.*, 293 Va. 354, 360 (2017) (quoting Code § 8.01-184).  The controversy must be one "that is justiciable, that is, where specific adverse claims, based upon present rather than future or speculative facts, are ripe for judicial adjustment."  *Id.* at 361 (emphases omitted) (quoting *Charlottesville Area Fitness Club*, 285 Va. at 98).

In *Hoffman*, a property owner sought to develop land with a developer that the plaintiff claimed would violate a restrictive covenant on that land. 259 Va. at 687-89. The relevant authorities approved the developer's concept plan and zoning change. *Id.* at 691. The Supreme Court held that, although it could "envision cases where the proposed development of property would be so speculative and indefinite as to not rise to the level of a justiciable controversy," a justiciable controversy existed because the owner and developer had "taken substantial steps, with significant financial expense, in developing specific plans for the development." *Id.* at 693-94. The Court explained that "without a judicial resolution of the effect of the restrictive covenant in question the parties would be left without relief from the uncertainty and insecurity attendant upon the continuing controversy." *Id.* at 694.

A few years later, the Supreme Court clarified that the "substantial steps, with significant financial expense" in *Hoffman* were sufficient but not necessary to create a justiciable controversy. *River Heights Assocs. v. Batten*, 267 Va. 262, 268 (2004) (quoting *Hoffman*, 259 Va. at 693-94). In *Batten*, the owner of subdivided lots subject to a residential-only restrictive covenant met with members of the subdivision and "indicated that he intended to commercially develop the properties at issue [and] he spoke of developing a commercial three (3) story office building with related parking facilities." *Id.* at 269 (alteration in original). He had also asked a local architect "to provide . . . a proposal to do a planned development," which the architect said he would provide "in approximately two months." *Id.* The Supreme Court held that a justiciable controversy existed because the owner had asserted the power to commercially develop the lots and the architect was developing a proposal. *Id.* at 269-70.

Here, the Association has demonstrated its intent to amend the declaration to extend the period in which it can expand the condominium and explicitly stated its belief that it needs only two-thirds approval to do so. Upon renewed discussion of a Phase III expansion, in 2021

- 6 -

Lavering sent a letter to the Association through counsel expressing his concerns. After receipt of that letter, and clearly in furtherance of its intent to expand, in 2022 the Association convened its Board, passed a policy resolution, and expended financial resources retaining counsel to draft a proposed amendment to the declaration. Those actions are analogous to the substantial steps and financial expenses as referenced in *Hoffman* and *Batten*. As there was a justiciable controversy, the circuit court properly exercised jurisdiction to hear the declaratory judgment action under § 8.01-184.[5]

### B. Lavering's Statutory Arguments

"In an appeal from a circuit court's decision to grant or deny summary judgment, [the appellate court] review[s] the application of the law to undisputed facts de novo." *Ranger v. Hyundai Motor Am.*, 302 Va. 163, 169 (2023). Appellate courts "review a trial court's construction of statutory provisions de novo." *VACORP v. Young*, 298 Va. 490, 494 (2020). The Court's task "is to ascertain and give effect to legislative intent, as expressed by the language used in the statute." *Norfolk Dep't of Hum. Servs. v. Goldberg*, 81 Va. App. 667, 676 (2024) (quoting *Verizon Va. LLC v. State Corp. Comm'n*, 302 Va. 467, 477 (2023)). It is a "fundamental rule[]" of statutory interpretation that courts must strive to "giv[e] to every word and every part of the statute, if possible, its due effect and meaning, and to the words used their ordinary and popular meaning, unless it plainly appears that they were used in some other sense." *Wills v. Wills*, 72 Va. App. 743, 755 (2021) (quoting *Epps v. Commonwealth*, 47 Va. App. 687 (2006) (en banc), *aff'd*, 273 Va. 410 (2007)). "When the language of a statute is

---

[5] We also reject the Association's argument that Lavering failed to assign error to an alternative holding by the trial court. Although the Code contains methods for increasing the number of units in a condominium through merger or termination and reconstitution, Code §§ 55.1-1936(B), -1937(B), the trial court based its ruling on an interpretation of Code § 55.1-1916(C)(3), not on the availability of other options to add new units. We conclude that each of Lavering's arguments are adequately briefed and encompassed within his assignments of error.

unambiguous, we are bound by its plain meaning." *Norfolk Dep't of Hum. Servs.*, 81 Va. App. at 676.

The statutory questions raised by Lavering center on a single theme: the threshold number of unit owners' approval required to extend the time limit to conduct a condominium expansion. Resolving this issue requires reconciling several provisions of the Virginia Condominium Act involving time limitations. "Generally, statutes with a common purpose or in the same general plan are considered as *in pari materia*." *Morgan v. Commonwealth*, 301 Va. 476, 481 (2022). "When considering statutes as *in pari materia*, they should not be analyzed as isolated fragments of law." *Id.* Instead, they "are considered as if they constituted but one act" and "should be so construed as to harmonize the general tenor or purport of the system and make the scheme consistent in all its parts and uniform in its operation, unless a different purpose is shown plainly or with irresistible clearness." *Id.* (quoting *Prillaman v. Commonwealth*, 199 Va. 401, 405 (1957)).

Code § 55.1-1916(C)(3) provides that the declaration of an expandable condominium must contain:

> A time limit, not exceeding 10 years after the recording of the declaration, upon which the option to expand the condominium shall expire, together with a statement of the circumstances, if any, that will terminate that option prior to the expiration of the time limit so specified. After the expiration of any period of declarant control reserved pursuant to subsection A of [Code] § 55.1-1943, such time limit may be extended by an amendment to the declaration made pursuant to [Code] § 55.1-1934.[6]

---

[6] When the Declaration was recorded in 1991, the time limit was not to exceed seven years, and the statute cross-referenced the predecessors to Code §§ 55.1-1934, -1943(a). Code § 55-79.54(c)(3) (1991). The statute is otherwise unchanged.

The parties dispute the meaning of "such time limit" in Code § 55.1-1916(C)(3). In Lavering's view, "such time limit" refers to the period of declarant control. In the Association's view, it refers to the period in which the condominium may be expanded.

Lavering's interpretation relies primarily on the "rule of the 'last antecedent,'" which "requires that all qualifying words and phrases, *where no contrary intention appears*, apply only to the last antecedent." *Scott v. Commonwealth*, 292 Va. 380, 384 (2016) (emphasis added). "The last antecedent is the last word, phrase or clause that can be made an antecedent without impairing the meaning of the sentence." *Id.* In Lavering's view, the "period of declarant control" referenced in the second sentence of Code § 55.1-1916(C)(3) is a time limit, and therefore the last antecedent that can be modified by the phrase "such time limit."

The last antecedent rule can be overcome by the appearance of contrary intention. *Newberry Station Homeowners Ass'n v. Bd. of Supervisors of Fairfax Cnty.*, 285 Va. 604, 615 (2013). Notably, Code § 55.1-1916(C)(3) uses the specific phrase "time limit" three times, and the first two uses indisputably refer to the expansion period. Courts "presume that the legislature chose, with care, the specific words of the statute." *West Virginia v. State Corp. Comm'n*, 304 Va. 148, 158 (2025) (quoting *Va. Elec. & Power Co. v. State Corp. Comm'n*, 300 Va. 153, 163 (2021)). As such, we presume that the General Assembly carefully chose the phrase "such time limit" to refer to the same period that the statute has already identified using the same phrase, "time limit."

That interpretation is bolstered by the Condominium Act as a whole, as reading the different parts of the Act *in pari materia* means reading Code § 55.1-1916(C)(3) in conjunction with the statute pertaining to the period of declarant control. At the time that declaration was recorded, that statute was Code § 55-79.74 (1991). Code § 55-79.74(A) gave the declarant certain powers, such as the power to appoint or remove officers of the unit owners' association.

The declarant could exercise those powers for a time specified in the declaration not to exceed five years. *Id.* The statute provided that "no amendment to the condominium instruments shall increase the scope of [the declarant's] authorization if there is any unit owner other than the declarant, and no such authorization shall be valid after the time limit set by the condominium instruments." *Id.* And crucially, it contained no mechanism for extending the period of declarant control. At the time of the declaration, Code § 55-79.74 was the statute most relevant to the period of declarant control, and Lavering's position that the General Assembly intended to override it in a separate section that pertains primarily to the expansion period is unconvincing.

In 2013, the General Assembly amended Code § 55-79.74 to permit the period of declarant control to be extended for up to 15 years at the declarant's request, provided that, among other requirements, "a special meeting is held prior to the expiration of the initial period of declarant control." 2013 Va. Acts ch. 599. In that same Act, the General Assembly moved the five-year time limit on declarant control from subsection (A) to subsection (B). 2013 Va. Acts ch. 599. In 2019, the General Assembly recodified Code § 55-79.74 as the current Code § 55.1-1943 without substantive change, and recodified Code § 55-79.54 as Code § 55.1-1916. 2019 Va. Acts ch. 712. Despite removing the five-year time limit from subsection (A) of Code § 55-79.74 years before, the recodified Code § 55.1-1916(C)(3) referred to subsection (A) of the new Code § 55.1-1943.

Accordingly, the current Code § 55.1-1943 provides a method for extending declarant control for up to 15 years, but only if such control has not yet expired. And it provides detailed procedures and requirements for accomplishing that extension. If the "such time limit" language in Code § 55.1-1916(C)(3) is interpreted to refer to the period of declarant control and not to the expansion period, then the statute would allow for the reinstatement of declarant control after it had already expired without resorting to the more stringent procedures in Code § 55.1-1943.

Instead, Code § 55.1-1916(C)(3) refers to the general rules for amending the condominium instruments in Code § 55.1-1934, which does not contain any time limits on amendments. Applying Lavering's reading to the current statutes would mean that an ongoing period of declarant control may be extended up to a maximum of 15 years if strict procedures are followed, as set forth in the statute pertaining to declarant control, while an expired period of declarant control may be revived with less stringent requirements and no maximum time limit, as set forth in a statute pertaining to a separate issue. That would be an absurd result. *See City of Charlottesville v. Payne*, 299 Va. 515, 532 (2021) ("An absurd result describes an interpretation that results in the statute being internally inconsistent or otherwise incapable of operation."). Thus we decide, as did the circuit court, that "such time limit" in Code § 55.1-1916(C)(3) refers to the expansion period, not the period of declarant control.

The question then becomes whether amending the condominium instruments to extend the option to expand "change[s] . . . the undivided interest in the common elements" such that the amendment falls under the unanimity requirement of Code § 55.1-1934(E). While we agree that the expansion proposed in Phase III would increase the number of condominium units, and therefore would dilute the relative interest of each unit in the common areas, we also agree with the Association, as did the circuit court, that there is a difference between the unit owners voting to expand the condominium and the unit owners voting to extend the time limit for declarant expansion. The mere option to expand does not, by itself, change the undivided interest in the common elements. The change occurs when the expansion actually occurs and the plats and plans are recorded. Code § 55.1-1918(B). Notably, the Association's 2003 amendment also illustrates this distinction. There, the Association established a three-and-a-half year period for Phase III expansion, but no new units were built, and the existing unit owners did not see any change in their interests in the common areas. Thus, it may be correct that the expansion itself

- 11 -

would require agreement of 100% of the unit owners, however, the question we resolve today is that increasing the *time limit* to pursue the option to expand only requires two-thirds approval.[7]

Finally, we reject Lavering's argument that the trial court's ruling amounted to the improper transfer of "special declarant rights." "'Special declarant rights' means any right reserved for the benefit of a declarant, *or of a person or group of persons that becomes a declarant*, to" do a variety of activities, including "expand an expandable condominium." Code § 55.1-1900 (emphasis added). Special declarant rights can be transferred "by a document evidencing the transfer recorded in every county and city in which any portion of the condominium is located." Code § 55.1-1947. That language tracks Code § 55.1-1911, which requires all amendments to the condominium instruments to be recorded in the same fashion. To the extent Lavering argues that no entity can succeed to a special declarant right once that right has expired, his argument is incompatible with his own reliance on Code § 55.1-1934(E). In other words, if only a declarant can expand, and the Association cannot amend the declaration to grant the right to expand to a new declarant, then a condominium cannot expand even if 100% of the unit owners vote for expansion.[8] We do not read the circuit court's ruling as granting a special declarant right to the Association. The circuit court merely held that the condominium instruments can be amended with the approval of two-thirds of the unit owners to extend the *period* in which the condominium may be expanded, and we agree with that conclusion.

---

[7] At oral argument, the Association conceded this point in stating "a straight up and down unit owners' vote on expanding the condominium, it would require unanimity." Oral Argument at 21:13 21:22, 21:45 22:10.

[8] Another special declarant right is the right to "maintain sales offices, management offices, model units, and signs pursuant to [Code] § 55.1-1929." Code § 55.1-1900. Clearly, the General Assembly did not intend to preclude non-declarants from exercising that power once the declarant's special right has expired. *See* Code § 55.1-1929 (providing that sales offices and model units "shall become a common element as soon as the declarant ceases to be a unit owner"). That fact illustrates that the expiration of a declarant's reserved right to conduct a particular activity does not mean the activity cannot thereafter be exercised by anyone else.

C. Sanctions[9]

This Court reviews the grant or denial of sanctions under an abuse of discretion standard. *Robert & Bertha Robinson Fam., LLC v. Allen*, 295 Va. 130, 139 (2018). When the court retains discretion, it has a range of choice, which "will not be disturbed as long as it stays within that range and is not influenced by [a] mistake of law." *Lawlor v. Commonwealth*, 285 Va. 187, 212-13 (2013) (quoting *Landrum v. Chippenham & Johnston-Willis Hosps., Inc.*, 282 Va. 346, 352 (2011)). Additionally, courts can abuse their discretion when: (1) "a relevant factor that should have been given significant weight is not considered," (2) "an irrelevant or improper factor is considered and given significant weight," or (3) "all proper factors, and no improper ones, are considered, but the court, in weighing those factors, commits a clear error of judgment." *Landrum*, 282 Va. at 352 (quoting *Kern v. TXO Prod. Corp.*, 738 F.2d 968, 970 (8th Cir. 1984)). "The abuse of discretion standard draws a line—or rather, demarcates a region—between the unsupportable and the merely mistaken, between the legal error . . . that a reviewing court may always correct, and the simple disagreement that, on this standard, it may not." *Jefferson v. Commonwealth*, 298 Va. 1, 10-11, (2019) (alteration in original) (quoting *Reyes v. Commonwealth*, 297 Va. 133, 139 (2019)). "Only when reasonable jurists could not differ can we say an abuse of discretion has occurred." *Bista v. Commonwealth*, 303 Va. 354, 370 (2024) (quoting *Commonwealth v. Swann*, 290 Va. 194, 197 (2015)).

Code § 8.01-271.1 permits the award of sanctions when a pleading is "interposed for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation." Code § 8.01-271.1(B), (D). The trial court carefully considered each of

---

[9] Lavering's motion for sanctions focused on many of the responses in the Association's answer. His opening brief on appeal, however, cites only one: the Association's denial that it took the position that expansion could be accomplished by a two-thirds vote. Accordingly, our review is confined to that issue.

Lavering's assertions and the Association's responses and discussed them in detail. Lavering alleged that "[t]he Association has asserted and continues to assert that there can be expansion of the Condominium with only a 66 and 2/3 favorable vote by the Unit Owners." The trial court found that the Association's denial of that allegation was grounded in truth and not made in bad faith because the Association's position was that the *option* to expand can be *extended* by two-thirds vote. That ruling was not an abuse of discretion, and we decline to reverse the trial court's denial of sanctions.

CONCLUSION[10]

For these reasons, we affirm the trial court's judgment.

*Affirmed.*

---

[10] Lavering also assigned error to the circuit court's awarding the Association its attorney fees, premised on us accepting his argument that the Association should not have been the prevailing party. Because we affirm the circuit court's judgment for the Association, we reject Lavering's argument that the court erred by awarding the Association its attorney fees under Code § 55.1-1915.