Present: Hassell, C.J., Keenan, Koontz, Lemons, and Goodwyn,
JJ., and Carrico and Russell, S.JJ.

BOARD OF SUPERVISORS
OF LOUDOUN COUNTY, ET AL.

v.  Record No. 071424         OPINION BY JUSTICE DONALD W. LEMONS
                                     September 12, 2008
TOWN OF PURCELLVILLE


COUNTY OF LOUDOUN

v.  Record No. 071425

TOWN OF PURCELLVILLE


BOARD OF SUPERVISORS
OF LOUDOUN COUNTY, ET AL.

v.  Record No. 071426

TOWN OF PURCELLVILLE


TOWN OF PURCELLVILLE

v.  Record No. 071505

BOARD OF SUPERVISORS
OF LOUDOUN COUNTY, ET AL.


MARTHA MASON SEMMES,
DIRECTOR OF PLANNING
AND ZONING FOR THE
TOWN OF PURCELLVILLE

v.  Record No. 071506

TOWN OF PURCELLVILLE
BOARD OF ZONING APPEALS, ET AL.


FROM THE CIRCUIT COURT OF LOUDOUN COUNTY
Thomas D. Horne, Judge

In these consolidated appeals[1] we consider various issues involving a dispute between the Town of Purcellville ("Town") and Loudoun County ("County") regarding the interpretation of an annexation agreement dated November 16, 1994 (the "Annexation Agreement") and a joint comprehensive plan known as the "Purcellville Urban Growth Area Management Plan" (the "PUGAMP").

## I. FACTS AND PROCEEDINGS

In 1994, the Town and the County entered into an Annexation Agreement defining the Town's future rights in the 3,100-acre "Urban Growth Area" ("UGA")[2] surrounding the Town's corporate limits. Under the Annexation Agreement, the Town received the right to annex areas within the UGA in exchange for relinquishing its right to seek city status. Although both the Town and the County had previously adopted comprehensive plans and zoning ordinances governing land use within their respective jurisdictions, the Annexation Agreement also provided for the development of a joint comprehensive plan for the UGA. The plan would address, among

---

[1] These five consolidated appeals are from two related judgments of the Circuit Court of Loudoun County. The first rendered a declaratory judgment; the second involved appeals from the County Board of Zoning Appeals and the Town Board of Zoning Appeals. In this opinion, "BZA" will be used for convenience in referring to the Boards.

[2] The UGA is also referred to as the Joint Land Management Area or JLMA.

other things, proffer guidelines and allocations, transportation networks, schools and other public facilities, land uses, density, environmental policies, and phasing. The County and the Town agreed that once a joint comprehensive plan was adopted, development within the UGA would "be in conformance with the Plan."

Thereafter, a joint comprehensive plan committee comprised of Town and County representatives drafted a plan. After formal review by the Town and the County Planning Commissions and a revision by Town and County Planning Commissioners, both Planning Commissions formally certified the final draft. This final draft, known as the PUGAMP, was separately adopted by the Town Council and the County Board of Supervisors in 1995 and was implemented as an element of both the Town's and the County's respective comprehensive plans.

Prior to implementation of the PUGAMP, the Town's comprehensive plan did not address land outside its corporate limits. The PUGAMP, however, expanded upon the Town's Comprehensive Plan by accommodating future development in the UGA. Although the County's previously adopted General Plan provided guidelines for land use in the UGA, these policies were superseded by the policies included in the PUGAMP. The County's Revised General Plan reiterates that development within the UGA will comply with the PUGAMP and the County will

work with Town officials on annexation, development, and other issues within the UGA.

Once "a local planning commission recommends a comprehensive plan" and it is "approved and adopted by the governing body," the plan controls "the general or approximate location, character and extent of each feature shown on the plan." Code § 15.2-2232(A). If a proposed development is not already a feature shown on the plan, then the proposal must be "submitted to and approved by the commission as being substantially in accord with the adopted comprehensive plan." Id. Both the Town and the County refer to the approval of a proposed development not shown on their comprehensive plans as a "commission permit," and both localities have established within their respective zoning ordinances a commission permit procedure consistent with the language of Code § 15.2-2232.

The PUGAMP's "Existing and Proposed School Locations" map identifies the "preferred location" for four new schools within the UGA: an elementary school designated by an "E" located southeast of the Town, another elementary school designated by an "E" located northwest of the Town, a middle school designated by an "M" located north of the Town, and a high school designated by an "H" located northeast of the Town. Although subdivisions were subsequently developed in the areas designated for the proposed middle school and the

4

proposed high school, the need for new school sites remained. Partly to address this need, in 2000 the County purchased a 230-acre tract of land lying northwest of the Town known as Fields Farm. Excepting 2.6 acres, Fields Farm is located entirely within the UGA. An elementary school was constructed on this property in the area previously designated for such use by the PUGAMP.

### A. The Declaratory Judgment Action

On May 15, 2006, the County School Board requested a "pre-application conference" with the County Planning Department to discuss the construction of a high school ("HS-3") at Fields Farm. Among other things, the School Board sought to confirm that a commission permit was not needed prior to HS-3's development. At the pre-application conference, held on May 24, 2006, the County Planning Department indicated that no commission permit was necessary for the Fields Farm proposal. However, this matter was deemed an "open issue to follow up on," because the Town contended that a commission permit was required. On June 1, 2006, the County Board of Supervisors met with the School Board to discuss HS-3. At the meeting, Julie Pastor ("Pastor"), the County's Planning Director, stated that a commission permit was not required for the proposed high school, subject to a

5

determination by the County Zoning Administrator.[3]  On June 19, 2006, the Town appealed the County's determination that no commission permits were necessary for HS-3's development to the County BZA.  On the following day, the Board of Supervisors authorized the County to seek a special use exception for construction of HS-3 at Fields Farm.

On June 21, 2006, the Town filed a Complaint and Application for Declaratory and Temporary Injunctive Relief in the Circuit Court of Loudoun County "as a result of the County's *ultra vires* and illegal action."  The Town alleged that "the County [had] completely ignored the Town's rights to be involved with, review and approve new development in the UGA as outlined by the PUGAMP, the Annexation Agreement, and Code §§ 15.2-2233 and –2232," and further, that "the County's continuation of the land development process violate[d] the procedural requirements of the . . . Annexation Agreement and the [PUGAMP as well as] the statutory stay of action imposed as a result of" the Town's June 19 appeal to the County BZA.

---

[3] In a March 8, 1999 memorandum, the County Zoning Administrator, Melinda Artman, designated the Chief of Comprehensive Planning as her agent in the determination of whether a use requires a Commission Permit.  Artman reiterated her designation of authority in this respect at a hearing before the County BZA held on September 28, 2006, stating, "I delegated my authority for determining whether a commission permit is required to the . . . Chief of Comprehensive Planning," whom she also referred to as "the Director of Planning."

The Town sought a declaration that "the Town's appeal was properly filed and . . . pending before the [County] BZA;" that the County's "participation . . . in the [s]pecial [e]xception process and authorization to proceed with the . . . development" of HS-3 at Fields Farm was "in furtherance of the matters appealed from by the Town" and "violate[d] the stay imposed . . . as a result of the Town's [a]ppeal;" and that no other proceedings related to HS-3 take place until the Town's appeal concluded. The Town also requested "such other and further relief as may be required to ensure the County's strict compliance with the governing law."

On the following day, Melinda Artman ("Artman"), the County Zoning Administrator, notified the Town by letter that its June 19 appeal to the County BZA was not accepted because the appeal was premature. Artman reasoned that the record of the pre-application conference specifically provided that no matters discussed would be binding on either the applicant or the County, and that no determination was made with regard to the commission permit by anyone acting on Artman's behalf at the pre-application conference. Artman stated, however, that based upon the pre-application conference she had been asked to render a determination on whether a commission permit was required, and a copy of her determination was enclosed. In

her letter, Artman communicated her decision that no commission permit was necessary for the construction of HS-3.

The County subsequently filed a demurrer and an answer denying the merits of the Town's claims. The County filed a plea in bar and a motion to dismiss thereafter, asserting the circuit court lacked jurisdiction to consider the Town's claims. The circuit court held a hearing on the matter on March 8, 2007, wherein the County contended that the case was moot because the Town's complaint sought relief specifically related to its June 19 appeal to the County BZA, which had been dismissed as premature, and further, that a declaratory judgment was not "an appropriate method of seeking relief."

The Town responded that the claim was not moot because the fundamental issue, based on both the May 24 pre-application conference and on Pastor's June 1 statement to the Board of Supervisors, concerned the County's ability to proceed with HS-3's construction in disregard of the Town's claim that it had the authority to review any proposed development within the UGA under the PUGAMP, the Annexation Agreement, and the Code.

The circuit court refused to dismiss the case, stating, "first, that the public interest exception would apply," and second, that the Town's request for "such other and further relief as may be required to ensure the County's strict

8

compliance with the governing law" was "sufficient when read in context with all the other remaining allegations in the pleading to put the case before the [c]ourt properly for declaratory judgment . . . with respect to the issuance of [a] commission permit."

On March 13, 2007, the circuit court rendered its opinion on the declaratory judgment. The circuit court ruled that the Annexation Agreement and the PUGAMP created a "joint comprehensive plan" entered into by the County and the Town pursuant to Code § 15.2-2231, and that through this agreement the County had "consented to the extension of the Town's comprehensive planning authority into the [UGA]." Continuing, the circuit court determined that it "was unnecessary for the parties to address the commission permit review process . . . because the right to review was inherent in the right to participate in the planning process." As a result, the circuit court declared that "the Town and [the] County have joint and concurrent authority to review and approve the location of public facilities within the [UGA]" under Code § 15.2-2232. The circuit court entered a final order on April 18, 2007, wherein it incorporated its March 13 letter opinion and further ruled that "the County's authority to undertake commission permit reviews for public facilities within the

9

[UGA] ceases when a property is annexed into the corporate limits of the Town."

## B. The BZA Appeals

While the Town's declaratory judgment action was pending, the County BZA and the Town BZA rendered three related decisions[4] concerning authority over new development within the UGA. These decisions were appealed to the Circuit Court of Loudoun County, which rendered a single opinion on the matters within one week of the declaratory judgment.

### 1. Semmes' Appeal from the Town BZA

On May 24, 2006, Martha Semmes ("Semmes"), the Town's Director of Planning and Zoning, informed the County that pursuant to the PUGAMP, both localities would have to apply for a commission permit for HS-3 because it was not a "feature shown" on the plan. The School Board and the Board of Supervisors subsequently appealed Semmes' determinations to the Town BZA. Following a hearing, the Town BZA determined that it did not have jurisdiction to consider an appeal arising from matters in controversy outside of the Town's corporate limits.

Semmes filed a petition for a writ of certiorari in the circuit court pursuant to Code § 15.2-2314, seeking review of

---

[4] One decision involved the consolidation of two matters making a total of four separate BZA cases.

10

the Town BZA's decision.  Specifically, Semmes contended that the PUGAMP had been implemented as part of the Town's comprehensive plan and, pursuant to Code § 15.2-2232 as incorporated into the Town's Zoning Ordinance, she had the authority as the Town Zoning Administrator to determine "whether a proposed public use [within the UGA] is a feature shown on the adopted comprehensive plan."  Semmes asserted that the Town Zoning Ordinance gives the Town BZA the authority to decide appeals "where an error is alleged in any . . . determination made by an administrative official in the administration or enforcement of [the Town Zoning] Ordinance," and therefore, the Town BZA erred in determining that it lacked jurisdiction to hear the appeal.

2.    The Town's First Appeal from the County BZA

Artman's June 22, 2006 letter denying the Town's June 19 appeal to the County BZA also contained the following determinations:

1.   Development of Fields Farm is exclusively governed by the Loudoun County Zoning Ordinance and only the County Zoning Administrator may make binding determinations regarding the applicable zoning regulations.
2.   No Town official "is authorized to make any . . . determination . . . concerning property in the unincorporated portion of the County, [s]pecifically, no Town official has authority to make determinations regarding [c]ommission [p]ermit requirements incorporated as part of the [Loudoun County Zoning Ordinance].

11

3. Even where a commission permit may be required for a school facility within the UGA, no commission permit is required from the Town under the Loudoun County Zoning Ordinance.
4. HS-3's development does not require a commission permit in any event because the location of a public high school at Fields Farm is a feature shown on the PUGAMP.

The Town appealed these determinations to the County BZA. The County BZA held a public hearing on the matter, but limited its review of the Town's arguments to the extent they related to the Loudoun County Zoning Ordinance, determining that its authority was "restricted to . . . the interpretation of zoning." The County BZA subsequently denied the Town's appeal and upheld Artman's June 22 determinations.

The Town filed a petition for a writ of certiorari in the circuit court pursuant to Code § 15.2-2314, seeking review of the County BZA's decision. Specifically, the Town contended that the County BZA incorrectly concluded that only the County Zoning Administrator and the Loudoun County Zoning Ordinance control determinations regarding the issuance of commission permits for public uses in the UGA; that the PUGAMP requires the Town engage in consistency determinations of proposed public uses in the UGA; that HS-3 is not a feature shown on the PUGAMP; and that, consequently, "the commission permit process mandated by Code § 15.2-2232 and the Town and County Zoning Ordinances must be followed." The Board of Supervisors

12

and the School Board filed an answer as intervening defendants, asserting the Town did not have the authority to make decisions concerning new development within the UGA.

### 3. The Town's Second Appeal from the County BZA

On June 23, 2006, Semmes sent a letter to the School Board regarding the proposed construction of an elementary school within the UGA. Semmes stated that both the County and the Town Planning Commissions would have to approve the site by commission permit before development could proceed. Artman responded on June 30, 2006 by letter, in which she stated that no Town official is authorized to make such determinations. Artman reasoned that, as a result, Semmes' June 23 letter was "null and void *ab initio*."

The Town appealed Artman's June 30 determinations to the County BZA. The County BZA held a public hearing on the matter, wherein it again indicated that it could "simply make determinations with regard to County zoning." Whether the Town could engage in the review of new development within the UGA under the PUGAMP, which "is not a zoning instrument," was deemed outside of the County BZA's jurisdiction. Consequently, the County BZA denied the Town's appeal and upheld Artman's determinations.

The Town filed a petition for a writ of certiorari in the circuit court pursuant to Code § 15.2-2314, seeking review of

13

the County BZA's decision. Specifically, the Town contended that the PUGAMP is the relevant comprehensive plan governing proposed uses within the UGA; that the commission permit process contained in the Town Zoning Ordinance required the Town to review new development within the UGA; that Code § 15.2-2286(4), as well as the Town Zoning Ordinance, specify that a locality's zoning administrator shall have all necessary authority on behalf of the Town; and that, consequently, whether the elementary school "is a feature shown on the PUGAMP was a necessary preliminary determination properly made by [Semmes] on behalf of the Town in the administration and enforcement of . . . the Town Zoning Ordinance, as well as in the implementation of the requirements of Code § 15.2-2232." The Board of Supervisors and the School Board filed an answer as intervening defendants, asserting the Town did not have the authority to make decisions concerning new development within the UGA.

4. The Circuit Court's Decision regarding BZA Appeals

The three BZA appeals were consolidated for one hearing before the circuit court, and on March 19, 2007, the circuit court rendered its decision by a single letter opinion. First, with respect to Semmes' appeal, the circuit court found that no authority exists within "the Annexation Agreement or state statute" pursuant to which the Town BZA could render

14

decisions affecting property located outside the Town's corporate limits. Second, the circuit court affirmed the County BZA's decision upholding Artman's determination that Semmes lacked authority "to make commission permit determinations respecting properties outside the corporate limits of the Town" because "no such power exists." Third, the circuit court held that the County BZA's decision that commission permit review was not required before proceeding with HS-3's development was "not erroneous" because it is "indisputable" that HS-3 is a feature shown on the PUGAMP. Fourth, the circuit court reversed the County BZA's decision upholding Artman's determinations "respecting the right of the Town to participate in the compliance review process with the County outside the corporate limits of the Town but within [the] PUGAMP" because the decision was inconsistent with the circuit court's March 13 opinion declaring that the Town and the County have joint and concurrent authority to review and approve the location of public facilities within the UGA. The circuit court affirmed the decision only "[t]o the extent that the [County BZA] rejected any claim by the Town that it might exercise zoning jurisdiction within the PUGAMP but outside the limits of the Town." The circuit court entered final orders on the three appeals on April 18, 2007, for the reasons stated in its March 13 and March 19 letter opinions.

15

## II. ANALYSIS

Both the County and the Town present several assignments of error that challenge the circuit court's interpretation of the PUGAMP and its subsequent rulings. Specifically, the County argues the circuit court erred in declaring that the Town has joint and concurrent authority to review and approve the location of new development within the UGA, and in holding that the County's authority to engage in the review process ends once unincorporated property is annexed by the Town. The County also assigns error to the circuit court's refusal to dismiss the Town's declaratory judgment action for lack of jurisdiction.

The Town contends that the circuit court erred in determining in the BZA appeals that neither the Town nor Semmes have the authority to engage in consistency review within the unincorporated portion of the County, and that HS-3 is a feature shown on the PUGAMP. Since the denial of the County's plea in bar and motion to dismiss present threshold issues, we will consider them first.

### A. Plea in Bar and Motion to Dismiss

#### 1. Mootness

According to the County, a fair reading of the Town's initial complaint reveals that the entire case was premised upon an appeal to the BZA that was premature. Therefore, the

16

County maintains, the matter before the BZA was moot and there was no jurisdictional basis upon which the trial court could entertain the Town's requested declaratory judgment and temporary injunctive relief. Additionally, the County asserts that the Town's general prayer of "such other further relief as may be required" was an insufficient basis for the circuit court's exercise of jurisdiction notwithstanding the lack of an underlying BZA appeal.

In response, the Town argues the case was not moot because the denial of the Town's initial BZA appeal did not resolve the underlying issues in the case. "The intent of the [Declaratory Judgment Act] is to have courts render declaratory judgments which may guide parties in their future conduct in relation to each other, thereby relieving them from the risk of taking undirected action incident to their rights, which action, without direction, would jeopardize their interests." Liberty Mut. Ins. Co. v. Bishop, 211 Va. 414, 421, 177 S.E.2d 519, 524 (1970). The Act "is to be liberally interpreted and administered with a view to making the courts more serviceable to the people," Code § 8.01-191, but courts may only issue declaratory judgments "in cases of actual controversy when there is antagonistic assertion and denial of right." Treacy v. Smithfield Foods, Inc., 256 Va. 97, 103, 500 S.E.2d 503, 506 (1998) (quotation marks and citations

omitted).  "Thus, the Declaratory Judgment Act does not give trial courts the authority to render advisory opinions, decide moot questions, or answer inquiries that are merely speculative."  Id. at 104, 500 S.E.2d at 506 (citations omitted).

By its terms, the PUGAMP is a comprehensive plan adopted by the County and the Town governing development within the UGA. However, the County's Planning Department and Planning Director maintained that HS-3's development would not require Town approval, and the Board of Supervisors subsequently authorized the County to seek a special use exception so that HS-3's development could proceed.  Conversely, the Town consistently asserted that it had an equal right to determine whether the proposed school site was consistent with the PUGAMP.

Clearly, a justiciable controversy existed between the County and the Town as to their rights under the terms of their joint agreement. See Criterion Ins. Co. v. Grange Mut. Cas. Co., 210 Va. 446, 449, 171 S.E.2d 669, 671 (1970) ("When a justiciable controversy exists between two insurance companies as to their obligations under the terms of their respective policies, a declaratory judgment proceeding may be maintained by one of the companies against the other").  The fact that the County BZA denied the Town's initial appeal as

18

premature does not indicate that an actual case or controversy within the contemplation of the Declaratory Judgment Act did not exist.  See Tazewell Cty. Sch. Bd. v. Brown, 267 Va. 150, 157-58, 591 S.E.2d 671, 674 (2004) (neither reinstatement nor resignation of school administrator mooted his claim of unfounded information in his personnel file).

Furthermore, the Town alleged in plain and explicit language that the County's actions violated the Annexation Agreement, the PUGAMP, the localities' zoning ordinances, and Code §§ 15.2-2223 and -2232, and the Town fully set forth its supporting reasoning in its complaint.  The Town's request that the County be "required to . . . comply with the governing law" was therefore sufficient to allow the circuit court to determine whether the County could proceed with HS-3's development within the UGA without the Town's approval by adjudicating the localities' respective rights under the PUGAMP.

2. Appropriateness of Declaratory Relief

The County also contends that a declaratory judgment was not the "proper vehicle for providing relief" because "the County had already acted and, therefore, the Town's rights, if any, had already accrued."  We disagree.  The Town sought a declaration of its rights under its written agreements with the County and the dispute presented would not be resolved

19

upon a dispositive factual question.  Therefore, declaratory judgment was a proper vehicle for relief.

Although "this [C]ourt and lower courts have . . . given a liberal interpretation to the Declaratory Judgment Act, they have nevertheless recognized that the power to make a declaratory judgment . . . will not as a rule [be] exercised where some other mode of proceeding is provided." Bishop, 211 Va. at 421, 177 S.E.2d at 524.  "Where a declaratory judgment as to a disputed fact would be determinative of issues, rather than a construction of definite stated rights, status, and other relations, commonly expressed in written instruments, the case is not one for declaratory judgment." Williams v. Southern Bank of Norfolk, 203 Va. 657, 663, 125 S.E.2d 803, 807 (1962) (quoting 16 Am. Jur., Declaratory Judgments, § 20 at 294-95).

For example, in USAA Casualty Insurance Co. v. Randolph, 255 Va. 342, 344-45, 497 S.E.2d 744, 745 (1998), an employee filed a declaratory judgment action to determine whether the Virginia Workers' Compensation Act would bar him from instituting a tort action for injuries sustained while he was at his place of employment.  We held that declaratory judgment was inappropriate "because the case [did] not involve a determination of rights, but only involve[d] a disputed issue to be determined in future litigation between the parties,

20

namely, whether [the employee's] injuries arose out of and in the course of his employment." Id. at 347, 497 S.E.2d at 747.

Similarly, in Green v. Goodman-Gable-Gould Co., Inc., 268 Va. 102, 108, 597 S.E.2d 77, 81 (2004), Goodman-Gable-Gould filed a declaratory judgment action to "determine whether it had substantially performed its obligations under [its] contract with [Green]" when Green requested Goodman-Gable-Gould withdraw from adjusting Green's fire loss claim. 268 Va. at 108, 597 S.E.2d at 81. We held declaratory relief was inappropriate because Goodman-Gable-Gould's "actual objective in the . . . proceeding was a determination of that disputed issue rather than an adjudication of the parties' rights," an issue which "should have been litigated in the context of a breach of contract claim." Id.

In contrast, rather than a determination of a disputed factual issue, the Town sought a declaration of its rights under its written agreements with the County. Therefore, this was "a classic case where declaratory judgment [was] appropriate to 'guide parties in their future conduct in relation to each other.' " Reisen v. Aetna Life and Cas. Co., 225 Va. 327, 335, 302 S.E.2d 529, 533 (1983) (quoting Bishop, 211 Va. at 421, 177 S.E.2d at 524). The trial court did not err by deciding the question.

B. The Trial Court's Judgment

21

The trial court held that:

> Being a joint plan, both the County and Town, are initiators of the Plan. The Annexation Agreement provides that the planning commissions of both jurisdictions would participate in the review of the document prepared by the unique Joint Comprehensive Plan Committee provided for in the Agreement. It was unnecessary for the parties to address the commission permit review process in the Annexation agreement or PUGAMP, because the right to review was inherent in the right to participate in the planning process.

For several reasons, we disagree.

In City of Richmond v. Board of Supervisors, 199 Va. 679, 684, 101 S.E.2d 641, 645 (1958), we stated the general "Dillon's rule" as follows:

> It is a general and undisputed proposition of law that a municipal corporation possesses and can exercise the following powers and no others: First, those granted in express words; second, those necessarily or fairly implied in or incidental to the powers expressly granted; third, those essential to the declared objects and purposes of the corporation, not simply convenient but indispensable. Any fair, reasonable doubt concerning the existence of the power is resolved by the courts against the corporation and the power is denied. Winchester v. Redmond, 93 Va. 711; 25 S.E. 1001, 57 Am. St. Rep. 822 [1896]; Wallace v. Richmond, 94 Va. 204, 26 S.E. 586, 36 L.R.A. 554 [1897]; Railway Co. v. Dameron, 95 Va. 545, 28 S.E. 951 [1898]; Duncan v. City of Lynchburg, 2 Va. Dec. 700, 34 S.E. 964, 48 L.R.A. 331 [1900].

However, we also stated the specific rule to be followed when the question is narrowed to consider the scope of a municipal corporation's extraterritorial powers. "A municipal

22

corporation is a mere local agency of the State and has no powers beyond the corporate limits except such as are clearly and unmistakably delegated by the legislature." Id. In this instance, there is no clear and unmistakable delegation of concurrent power of the Town to engage in zoning determinations in the unincorporated portion of the County. Section 15.2-2232 and any reviews provided therein pertain to the planning function and not zoning.

> Code § 15.2-2232(A) provides in part:
>
> Whenever a local planning commission recommends a comprehensive plan or part thereof for the locality and such plan has been approved and adopted by the governing body, it shall control the general or approximate location, character and extent of each feature shown on the plan. Thereafter, unless a feature is already shown on the adopted master plan or part thereof . . . no . . . public building or public structure . . . shall be constructed, established or authorized, unless and until the general location or approximate location, character, and extent thereof has been submitted to and approved by the commission as being substantially in accord with the adopted comprehensive plan or part thereof.

The "commission" referred to in Code § 15.2-2232 is the local planning commission referenced in Code § 15.2-2223: "The local planning commission shall prepare and recommend a comprehensive plan for the physical development of the territory within its jurisdiction." (Emphasis added). While the Town and the County jointly engage in planning, zoning

23

determinations within the unincorporated territory of the UGA remain under the exclusive authority of the County. The Town may participate in the process; however, zoning authority is left with the commission where the territory is located – in this case, in the County.

The trial court also held that once previously unincorporated territory in the UGA is annexed by the Town, it is no longer subject to commission permit review by the County. This partial holding by the trial court is correct and recognizes the "mirror image" of the County's zoning authority for territory in its jurisdiction. Each governmental entity retains zoning authority for territory in its jurisdiction. If the land encompassed by the PUGAMP remains in the County, it is the County that retains the power to decide. If the land in the PUGAMP is annexed by the Town, it is no longer in the County and it is the Town that has the power to decide.

Accordingly, the trial court erred in holding that "the right to review was inherent in the right to participate in the planning process." The planning process is distinct from zoning determinations. Pursuant to Code § 15.2-2232 and -2223, zoning authority remains exclusively with the commission that has "the territory within its jurisdiction."

## C. The BZA Appeals

24

The various BZA cases took convoluted paths to the trial court upon certiorari from decisions of the County BZA and the Town BZA. The County asserts that the Town and the County agreed that the appropriate standard of review by the trial court is to uphold the BZA's disposition unless it is "plainly wrong or without evidence to support" the decision. The Town disagrees. The record does reveal some discussion between counsel regarding the appropriate standard of review upon certiorari to the circuit court. Assuming without deciding that the parties had an agreement regarding this matter, the trial court utilized the standard of review contained in Code § 15.2-2314, giving deference to findings of fact incidental to BZA review of decisions of the zoning administrator. Under this standard, "the findings and conclusions of the [BZA] on questions of fact shall be presumed to be correct. The appealing party may rebut that presumption by proving by a preponderance of the evidence . . . that the [BZA] erred in its decision." Code § 15.2-2314. Conclusions of law reached by the BZA are not afforded the same presumption of correctness. See id. ("The court shall hear any arguments on questions of law de novo"). Because the trial court utilized the statutory standard of review and the County does not assign error to this determination, we will not utilize a

different standard purported to have been agreed upon by the litigants.

Both the Town and the County engaged in BZA review of issues relating to the underlying controversy. The Town Zoning Administrator determined that a commission permit must be obtained from the Town Planning Commission prior to locating HS-3 on the property in question because she determined that this feature was not depicted on the PUGAMP. The County appealed this determination to the Town BZA. The Town BZA concluded that it had no authority to make a ruling regarding whether the feature was on the PUGAMP, agreeing with the County that because the property in question was beyond Town corporate limits, the Zoning Administrator did not have authority to make such a determination and consequently, the Town BZA had no jurisdiction to review the matter.

On appeal, the trial court affirmed the Town BZA's decision that it did not have such authority. For the reasons previously stated herein concerning the declaratory judgment action, the trial court's holding was correct. The Town does not have extra-territorial jurisdiction concerning zoning decisions in the unincorporated area of the County that constitutes the UGA. Nothing in the Code, Annexation Agreement or the PUGAMP provides such authority.

The County Zoning Administrator also considered whether a commission permit was required to permit the construction of HS-3. The County Zoning Administrator made the following determinations:

1.   Development of the property is exclusively governed by the Loudoun County Zoning Ordinance and only the County Zoning Administrator is authorized to make binding determinations regarding the applicable zoning regulations.
2.   No official from the Town is entitled to make a determination that commission permits are required for the location of a high school on the property.
3.   A high school for the property is a feature shown on PUGAMP, the governing comprehensive plan.
4.   Even if a commission permit is required under the County Zoning Ordinance, no concurrence in that determination is required from the Town Planning Commission.

The Town appealed these determinations to the County BZA, which upheld each of the Zoning Administrator's decisions.

On appeal, the trial court affirmed the BZA's determination that the Zoning Administrator correctly determined that HS-3 is a feature shown on the PUGAMP and the trial court further held that no commission permit was required for the development of HS-3. The trial court reversed the remaining decisions of the County BZA declaring that those decisions were inconsistent with the trial court's ruling in the declaratory judgment action.

Herein we have held that the trial court erred in its judgment in the declaratory judgment action. Flowing from

27

that holding, the trial court also erred in reversing the BZA decisions 1, 2, and 4 above. As previously stated in the portion of this opinion dealing with the declaratory judgment action, only the County has zoning authority involving the development of HS-3 on the subject property. The Town may participate in the process, but the County has zoning authority over the commission permit question.

With regard to the trial court's ruling that HS-3 is a feature shown on the PUGAMP and that no commission permit is required for its development, we disagree. Code § 15.2-2223 states that a "comprehensive plan shall be general in nature, in that it shall designate the general or approximate location, character, and extent of each feature . . . shown on the plan and shall indicate where existing lands or facilities are proposed to be . . . changed in use." Under Code § 15.2-2232, unless already shown on the plan, a feature's "general" or "approximate location, character, and extent" must be "submitted to and approved by the commission as being substantially in accord with the adopted comprehensive plan" before being constructed. The trial court determined that HS-3 is a feature that is shown on the plan; consequently, commission permit review is not required in order to proceed with development.

Code § 15.2-2232 anticipates construction of features that are not shown anywhere on the comprehensive plan, in this case, the PUGAMP. Clearly, if a feature is not even mentioned, a commission permit is required to determine whether the proposal is "substantially in accord with the adopted comprehensive plan." However, the statute, standing alone, does not anticipate a feature being mentioned but later proposed to be constructed in a location significantly removed from the planning site.

When engaged in statutory construction, we must harmonize statutes as much as possible to give effect to all of their provisions. LZM, Inc. v. Virginia Dept. of Taxation, 269 Va. 105, 111, 606 S.E.2d 797, 800 (2005). The determination whether a feature is "already shown on the adopted master plan" pursuant to Code § 15.2-2232 must be made in light of the requirement that a "general or approximate location" of the feature is required in Code § 15.2-2223. The location of HS-3 on the PUGAMP is in the northeast corner of the UGA. The County's proposed location for building HS-3 is in the northwest corner of the UGA. The UGA is approximately three miles wide and the proposed location is two miles from the location of the feature on the PUGAMP. Because the proposed location is not in accordance with the "general or approximate location" requirement for the plan, the proposed location of

HS-3 amounts to the functional equivalent of no feature at all. Under these circumstances, we hold that the trial court erred in determining that the proposed construction of HS-3 is a feature shown on the PUGAMP and the trial court further erred in holding that no commission permit was required for the development of HS-3.

## III.  CONCLUSION

The trial court did not err in holding that the declaratory judgment action was properly before it and that the matters in controversy were not moot. However, we hold that the trial court erred in the declaratory judgment action by holding that with respect to the implementation of the PUGAMP, "the right to review was inherent in the right to participate in the planning process." For the reasons stated herein, this error affected the trial court's judgment in the BZA appeals. Finally, the trial court erred in holding that HS-3 is a feature shown on the PUGAMP and that no commission permit is required for its development.

With regard to these consolidated appeals, we will affirm in part and reverse in part as stated herein and remand these matters for further proceedings consistent with this opinion.

Affirmed in part,
reversed in part,
and remanded.