## CIRCUIT COURT OF FAIRFAX COUNTY

Maroun Tabet

v.

Terry Sheban et al.

June 9, 2011

Case Nos. CL-2010-16816, CL-2011-02188

By JUDGE BRUCE D. WHITE

These matters came before the Court on June 2, 2011, upon Defendants' Motion to Dismiss and Motion to Quash. At the conclusion of the hearing, the Court took the matters under advisement. After careful consideration of the pleadings, memoranda, and arguments of counsel, the Court is prepared to rule in these matters.

*Background*

The Plaintiff, Maroun Tabet, is a lawyer licensed to practice law in the Republic of Lebanon. He maintains an office in Fairfax County where he allegedly provides consulting services for legal affairs arising in Lebanon. The Defendants, Terry Sheban, Christopher Sheban, James Sheban, Jeffrey Sheban, Jeneen Sheban Beckett, Pauline Sheban, and George Sheban (collectively, "Defendants"), are relatives who inherited real property located in Lebanon. None of the Defendants reside in the Commonwealth of Virginia.

According to Tabet, Julia Patrone, a relative of the Defendants', contacted Tabet in 1996 for assistance relating to various parcels of real property located in Lebanon. Shortly thereafter, Patrone, a resident of Ohio, met with Tabet at his office in Fairfax County. During the meeting, Patrone, acting as agent for the Defendants, appointed Tabet as the family's

attorney-in-fact to, *inter alia*, clear title to and sell several properties located in Lebanon.

Notwithstanding this alleged appointment in 1996, Tabet claims that, on or about July 28, 2007, all of the Defendants met with him at his office in Fairfax County to execute powers of attorney granting him the authority to sell the properties in Lebanon. The Defendants signed their respective Power of Attorney, and each document was notarized by Jean Agbey, a Virginia Notary Public. After executing the powers of attorney in 2007, the parties did not meet again until on or about March 20, 2010, when Defendants returned to Tabet's office in Fairfax County to discuss various issues relating to the sale of the properties.

In October 2010, Tabet alleges that Defendant Terry Sheban, acting on behalf of all the Defendants, accused Tabet of not properly fulfilling his duties under the powers of attorney. On November 30, 2010, Tabet filed a Complaint seeking a declaratory judgment regarding the propriety of his actions taken under the powers of attorney. On February 11, 2011, an Order of Default was entered against Defendants Christopher Sheban, Jeffrey Sheban, Jeneen Sheban Beckett, and George Sheban. Plaintiff nonsuited the remaining Defendants. On February 15, 2011, Tabet filed a second Complaint seeking a declaratory judgment regarding his rights and responsibilities under the same powers of attorney. On May 13, 2011, an Order of Nonsuit was entered dismissing only George Sheban and Jeneen Sheban Beckett from the second matter.

The Defendants, however, take issue with several of Tabet's factual assertions. The Defendants claim that Patrone, acting as the Personal Administrator of her father's estate in Lebanon, contacted Tabet on her own behalf seeking legal advice regarding the sale of estate property. While the Defendants concede that they executed various powers of attorney appointing Tabet as their attorney-in-fact to sell the properties located in Lebanon, the Defendants dispute the allegation that the documents were executed in Virginia on July 28, 2007. According to the Defendants, they spent the entire day in New York City on July 28, 2007. The Defendants claim that they came to Fairfax County once, at Tabet's request, to receive an update on issues related to the sale of the properties.

Defendants now move, by special appearance, to dismiss the first suit and quash the second suit on the grounds that the Court lacks personal, subject-matter, and territorial jurisdiction to adjudicate the matters. Both Motions were heard before this Court on June 2, 2011.

*Discussion*

A. *Personal Jurisdiction*

To survive a challenge to jurisdiction, a plaintiff need only establish a *prima facie* case of personal jurisdiction. *See McNutt v. General Motors*

*Acceptance Corp.*, 298 U.S. 178, 180, 56 S. Ct. 780, 80 L. Ed. 1135 (1936); *Rannoch, Inc. v. The Rannoch Corp.*, 52 F. Supp. 2d 681, 684 (E.D. Va. 1999); *Davey Tree Expert Co. v. Jackson*, 69 Va. Cir. 350, 351 (Fairfax County 2005). "The question is one for the judge, with the burden on the plaintiff ultimately to prove the existence of a ground for jurisdiction by the preponderance of the evidence." *Combs v. Bakker*, 886 F.2d 673, 676 (4th Cir. 1989). Furthermore, the court must draw all reasonable inferences and resolve all factual disputes in the plaintiff's favor. *Eastern Tech. Enters., Inc. v. Wilson & Hayes, Inc.*, 46 Va. Cir. 558, 560 (Norfolk 1997) (citing *Mylan Labs., Inc. v. Akzo, N.V.*, 2 F.3d 56, 60 (4th Cir. 1993)).

When confronted with challenges to personal jurisdiction, courts have articulated a two-step, fact-specific process involving statutory and constitutional inquiries. Beginning with the statutory inquiry, Virginia's long arm statute provides, in relevant part, that "A court may exercise personal jurisdiction over a person, who acts directly or by an agent, as to a cause of action arising from the person's . . . [t]ransacting any business in this Commonwealth." Va. Code § 8.01-328.1(A)(1).

Upon a determination that the long arm statute confers personal jurisdiction over a nonresident, the courts must then resolve the constitutional inquiry. "While there are two steps, 'because Virginia's long-arm statute extends personal jurisdiction to the extent permitted by the Due Process Clause . . . the statutory inquiry necessarily merges with the constitutional inquiry, and the two inquiries essentially become one'." *Davey Tree*, 69 Va. Cir. at 352 (citing *Young v. New Haven Advocate*, 315 F.3d 256, 261 (4th Cir. 2002)). *See also Consulting Eng'rs Corp. v. Geometric, Ltd.*, 561 F.3d 273, 277 (4th Cir. 2009).

The touchstone question, therefore, when evaluating the propriety of personal jurisdiction over a nonresident is "whether the defendant has sufficient minimum contacts with [the forum] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Davey Tree*, 69 Va. Cir. at 352 (quoting *International Shoe Co. v. Washington*, 326 U.S. 310, 316, 66 S. Ct. 154, 90 L. Ed. 95 (1945)). Factors relevant to "fair play and substantial justice" include "the burden on the defendant, the forum State's interest in adjudicating the dispute, the plaintiff's interest in obtaining convenient and effective relief, the interstate judicial system's interest in obtaining the most efficient resolution of controversies, and the shared interest of the several States in furthering fundamental substantive social policies." *Burger King v. Rudzewicz*, 471 U.S. 462, 477, 105 S. Ct. 2174, 85 L. Ed. 2d 528 (1985) (quoting *World-Wide Volkswagen v. Woodson*, 444 U.S. 286, 292, 100 S. Ct. 559, 62 L. Ed. 2d 490 (1980)).

When assessing whether a nonresident's contacts with the forum state suffice to extend personal jurisdiction under the Due Process Clause, the Supreme Court has provided the following guidance:

> The application of [the minimum contacts] rule will vary with the quality and nature of the defendant's activity, but it is essential in each case that there be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws. . . .

*Hanson v. Denckla*, 357 U.S. 235, 253, 78 S. Ct. 1228, 2 L. Ed. 2d 1283 (1958). Critical to this due process analysis is the "foreseeability . . . that the defendant's conduct and connection with the forum state are such that he should reasonably anticipate being haled into court there." *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297, 100 S. Ct. 559, 62 L. Ed. 2d 490 (1980):

Here, Tabet contends that the Court has personal jurisdiction over Defendants on the basis of three specific contacts with Virginia: (1) Patrone, acting as agent for all of the Defendants, met with Tabet at his office in Fairfax County in 1996; (2) the Defendants executed powers of attorney at Tabet's office in Fairfax County in 2007; and (3) the Defendants met with Tabet again at his office in Fairfax County in 2010. Because Tabet failed to provide any evidence purporting to show that Patrone was acting as agent of the Defendants when she met with Tabet in 1996, over a decade before powers of attorney were executed by the Defendants, the Court is not persuaded that Patrone's contact with Tabet in Virginia bears any significance upon a determination of whether this Court may exercise personal jurisdiction over the Defendants. Thus, drawing all inferences and resolving all factual disputes in favor of the Tabet for purposes of this motion, the Court will focus its analysis on the Defendants' contacts with Virginia in 2007 and 2010.

The Court finds that the Tabet has established a *prima facie* case of personal jurisdiction over the Defendants. Jean Agbey, Tabet's sole witness, testified that he notarized each Power of Attorney executed by the Defendants on or around July 28, 2007. The Defendants do not dispute the language of these documents nor do they dispute that their respective Power of Attorney appears to accurately reflect their signature and a copy of their driver's license. Rather, they impugn the date and place of execution.

Defendant Christopher Sheban testified that, while he did execute a Power of Attorney, he did so sometime prior to 2007 in Illinois. To support his testimony, various receipts purporting to show that he was in New York City on July 28, 2007, were introduced and admitted into evidence. While these receipts suggest that Defendant Christopher Sheban may have been in New York City on July 28, 2007, the Court is not persuaded that the receipts disprove his presence in Virginia on the same date. Moreover, the Court questions the credibility of Defendant Christopher Sheban, who was meticulous enough to save receipts from a trip to New York City almost

four years ago yet failed to save a copy of the Power of Attorney he claims he executed in Illinois.

Persuaded by the testimony of Jean Agbey, the Court will assume for purposes of this motion that the Defendants executed powers of attorney in Virginia in 2007. On or around March 20, 2010, the Defendants returned to Virginia to meet again with Tabet. The parties do not dispute the date or place of this meeting.

By voluntarily creating a continuing relationship with Tabet, who maintained an office and performed work for the Defendants in Virginia, the Defendants purposefully availed themselves of the privilege of conducting activities within this Commonwealth. Furthermore, the Defendants' contacts with Virginia are such that they should have reasonably anticipated being haled into court here should any controversies arise under the powers of attorney.

Moreover, the Defendants, all of whom reside in states other than Virginia, would not be substantially burdened by having to defend in Virginia. The Defendants knowingly established a relationship with Tabet whose office is located in this Commonwealth, and they came to Virginia on two separate occasions.

The Court finds that the Defendants established sufficient minimum contacts with Virginia. In accord with the Due Process Clause, the Court has personal jurisdiction over the Defendants.

## B. *Subject Matter Jurisdiction*

Defendants next argue that this Court lacks subject matter jurisdiction to adjudicate Tabet's actions for a declaratory judgment. Subject-matter jurisdiction is the authority granted to a court through constitution or statute to adjudicate a class of cases or controversies. *Earley v. Landsidle*, 257 Va. 365, 371, 514 S.E.2d 153, 156 (1999).

Under the Virginia Declaratory Judgment Act, Va. Code § 8.01-184 (2011) *et seq.*, circuit courts are vested with the authority to make binding adjudications of right and to issue judgments in cases of actual controversy. As explained by the Virginia Supreme Court:

> The intent of the declaratory judgment statutes is not to give parties greater rights than those which they previously possessed, but to permit the declaration of those rights before they mature. In other words, the intent of the act is to have courts render declaratory judgments which may guide parties in their future conduct in relation to each other, thereby relieving them from the risk of taking undirected action incident to their rights, which action, without direction, would

jeopardize their interests. This is with a view rather to avoid litigation than in aid of it.

*Liberty Mut. Ins. Co. v. Bishop*, 211 Va. 414, 421, 177 S.E.2d 519, 524 (1970). "[T]he Declaratory Judgment Act does not give trial courts the authority to render advisory opinions, decide moot questions, or answer inquiries that are merely speculative." *Board of Supervisors v. Town of Purcellville*, 276 Va. 419, 434, 666 S.E.2d 512, 519 (2008) (quoting *Treacy v. Smithfield Foods, Inc.*, 256 Va. 97, 104, 500 S.E.2d 503, 506 (1998)).

In this case, Tabet filed two actions for a declaratory judgment. In the first suit, Tabet seeks a declaratory judgment regarding the propriety of his actions taken under the powers of attorney executed by the Defendants. Because Tabet concedes that the declaratory relief sought in the first suit would require the Court to render an advisory opinion, the Motion to Dismiss is granted.

In the second suit, Tabet seeks a declaratory judgment regarding his rights and responsibilities under the same powers of attorney. The Defendants have allegedly accused Tabet of acting improperly under the powers of attorney. The Defendants, however, have not revoked the authority granted to Tabet by the powers of attorney. In response, Tabet filed this suit seeking a declaratory judgment that defines his authority under the powers of attorney such that he may be relieved of the risk of taking unauthorized action in the future. Because Tabet alleges that his authority under the powers of attorney is in dispute and he prays for a declaratory judgment that defines the parties' rights and responsibilities under the powers of attorney, it appears an actual controversy exists. The Court, therefore, does have subject-matter jurisdiction to adjudicate this matter.

## C. *Territorial Jurisdiction*

Finally, the Defendants argue that the Court lacks territorial jurisdiction to adjudicate the matters because the case concerns land transactions that occurred in Lebanon and all of the documents, witnesses, and case materials are located in Lebanon. Territorial jurisdiction is the authority granted to a court over persons, things, or occurrences located in a defined geographic area. *Morrison v. Bestler*, 239 Va. 166, 169, 387 S.E.2d 753, 755 (1990). "The territorial jurisdiction of the court over a matter involves the venue of the suit or action." *Nash v. Harman*, 148 Va. 610, 614, 139 S.E. 273, 275 (1927). In actions for declaratory judgment, venue is proper in a forum convenient to the parties and witnesses, and where justice can be administered without prejudice. Va. Code §§ 8.01-185, 8.01-257 (2011), *et seq.*

Here, the Court has determined that it has personal jurisdiction over the Defendants based upon their minimum contacts with Virginia. Thus, venue is properly laid in Virginia. The Court is not persuaded by the Defendants' argument that all of the documents, witnesses, and case materials required for a proper adjudication of Tabet's actions for a declaratory judgment are located in the geographic area of Lebanon. Because the Defendants' argument belies the Court's interpretation of minimum contacts under the long-arm statute and the Due Process Clause, the Court rejects Defendant's argument that the Court lacks territorial jurisdiction.

## Conclusion

Because Tabet concedes that adjudication of his first suit for a declaratory judgment would require the Court to render an advisory opinion, the Motion to Dismiss is granted. The Court has personal, subject matter, and territorial jurisdiction over Tabet's second suit. Accordingly, the Motion to Quash is denied.