PRESENT: Goodwyn, C.J., Powell, Kelsey, McCullough, and Chafin, JJ., and Russell and Millette, S.JJ.

AMES CENTER, L.C.

                                        OPINION BY

v. Record No. 210640                 JUSTICE D. ARTHUR KELSEY
                                         AUGUST 18, 2022

SOHO ARLINGTON, LLC

FROM THE CIRCUIT COURT OF ARLINGTON COUNTY
Daniel S. Fiore II, Judge

Claiming the status of a third-party beneficiary of a long-term ground lease, a developer filed a declaratory-judgment action against the lessee of an adjoining property, seeking to resolve conflicting interpretations of a lease provision. After holding that the developer was a third-party beneficiary, the circuit court concluded that its work was done and dismissed the case as having no further justiciable controversies to resolve. We disagree and remand the case to the circuit court to resolve the remaining contest over the scope of the developer's rights as a third-party beneficiary of the lease.

I.

The developer, Ames Center, L.C. ("Ames"), filed this declaratory-judgment action against SOHO Arlington, LLC ("SOHO"). Ames seeks to build two 30-story buildings on property that it owns in Arlington, which adjoins property that SOHO leases pursuant to a long-term ground lease, entered into in 1973. SOHO owns and operates a hotel on its leased property and opposes Ames's development plans.

In its complaint, Ames alleged that a provision in the ground lease gives it the right, as a third-party beneficiary, to enter SOHO's property for purposes of furthering Ames's development plans. That provision, Section 24.01 of Article 24, provides:

> If any excavation, subsurface construction, remodeling or
> other building operation (hereinafter collectively referred to as an

"Excavation") shall be made or contemplated to be made for building or other purposes upon property, avenues, streets, alleys, vaults or passageways adjacent to, or nearby the Premises, Tenant, in compliance with all applicable provisions of all Laws and Ordinances, either

> (a) shall afford to the person or persons causing or authorized to cause such Excavation the right to enter upon the Premises for the purpose of doing such work as such person or persons shall consider to be necessary to the safety and preservation of any of the foundations, walls or structures of the Building from injury or damage and to support the same by proper foundations, or

> (b) shall at Tenant's expense, do or cause to be done all such work as provided in subdivision (a) above.

J.A. at 68-69.

The complaint also alleged that SOHO has categorically denied that Ames had any right of entry onto SOHO's property pursuant to this provision in the lease. After learning of Ames's intentions, SOHO's counsel informed Ames that "no one from your company is welcome within the hotel or on the grounds of the property, for any reason." *Id.* at 79. If any Ames representatives entered the SOHO property, counsel added, SOHO "will contact authorities to have such individuals removed for trespassing" and "will take full advantage of all actions available to it under the law, both civil and criminal." *Id.* A subsequent letter from SOHO's counsel specifically warned Ames not to use a construction crane that may "swing" over SOHO's airspace. *Id.* at 81. SOHO further advised that it would be "vigilantly monitoring the project activities and [would] seek recompense for any trespass or damages that may occur." *Id.*

The circuit court first addressed whether Ames qualified as a third-party beneficiary of the 1973 ground lease. Over SOHO's objection, the court held that Ames was a third-party beneficiary and therefore had acquired rights under the ground lease. The debate then pivoted to the nature and extent of those rights. Relying on Section 24.01 of the lease, Ames argued that it

2

could enter upon SOHO's property to perform actions in support of Ames's "contemplated" building operations. *Id.* at 68. The specific actions would include excavation of the common boundary line between the properties and "the movement of construction equipment, materials and supplies" using a "tower crane" that would swing over SOHO's airspace. *Id.* at 118; *see also id.* at 8-9. These actions, Ames argued, were essential to preparing "engineering and architectural plans" in support of "permit requests" for construction work. *Id.* at 118. The actual county construction permits, however, would be issued in the last stage of the planning process.

SOHO interpreted Section 24.01 more narrowly. Under this interpretation, Ames has no right of entry (except for mere walk-through inspections) until Ames presents "concrete plans in hand." *Id.* at 119. SOHO added that Ames should have "negotiated long ago" with SOHO on the scope of the right of entry, suggesting that SOHO should be "compensated" for some aspects of Ames's proposed entry onto the property. *Id.* at 222-23. Seeking clarification on this point, the circuit court asked: "[I]s it SOHO's position that Ames has therefore no rights whatsoever?" *Id.* at 233. SOHO's counsel replied:

> It's our position that they have to . . . be in compliance with all of the applicable provisions of all laws and ordinances as a precondition to exercising these. *So — so, the answer is yes.* But if they come up with a permit, a permission, an easement, things that would be negotiated, then — then, we don't have anything to say, right? I mean, then it's done. And they could have come to us and received those things.

*Id.* at 233-34 (emphasis added).

Stating that SOHO's argument was "almost as clear as mud," the court explained that "Ames is entitled to the provision of the 24.01(a). . . . Whatever that means, I'm not saying." *Id.* at 234. The court asked SOHO's counsel: "[D]o you disagree that [Ames has] the right to come in to protect or preserve the foundation wall of the structures?" *Id.* at 235. "In a word, yes,"

3

SOHO's counsel answered, "but the qualification is that if they have the laws and ordinances, which is defined to include permits, permissions and legally clearly [sic] easements, for example, then we would have to be in compliance with those." *Id.*

In the end, the court concluded that it did not need to address SOHO's argument that Ames needed permits, permissions, or easements prior to enforcing its right of access under Section 24.01(a) because SOHO had not yet denied any specific request by Ames to exercise its right of entry. *Id.* at 237. To resolve that debate, according to the court, Ames needed to file "a new DJ action." *Id.* at 241. The court concluded that the "only issue" it needed to decide in the present action was whether Ames was a third-party beneficiary to the lease. *Id.* at 243. Ames objected, insisting that the court should "declare the rights and the right to enforce [the lease] and there [was] a dispute over that." *Id.* at 246.

The court's final order found that Ames, as a third-party beneficiary of the ground lease, could "enforce such rights afforded it as they may be provided therein . . . ." *Id.* at 271. The order, however, did not address the competing interpretations of "such rights" offered by the parties. *Id.* The court also refused Ames's request to "incorporate the language of [Section] 24.01(a) into" the court's final order. *Id.* at 230. "I'm not going to do that," the court stated. *Id.* "I don't know what your right is," the court explained. *Id.* "I don't know what you're trying to do. So, I can't say whether or not it's — it's outside or within" the scope of Section 24.01(a). *Id.* Ames objected to the final order to the extent that it "failed to declare the scope of Ames's rights under the Ground Lease." *Id.* at 272.

## II.

On appeal, Ames argues that the circuit court erred in concluding that no justiciable controversy existed concerning the scope of Ames's rights under the 1973 ground lease.

4

Dismissing the case after declaring Ames to be a third-party beneficiary that could enforce the lease, Ames contends, was premature because the parties continue to categorically disagree on what specific rights, if any, Ames has under the lease and when those rights can be asserted. We agree with Ames.

A.

Prior to the Declaratory Judgment Act, Code §§ 8.01-184 to -191, the common law closed the courthouse doors to most (but not all) contractual disputes[1] if the claimant could not assert each of the three elements of a fully accrued, prima facie claim: a contractual duty, an unexcused breach, and a legally cognizable damage. *See Pure Presbyterian Church of Washington v. Grace of God Presbyterian Church*, 296 Va. 42, 55-56 (2018).[2] If any one of those allegations were absent, the claimant's putative dispute would be deemed nonjusticiable. The Declaratory Judgment Act created an intermediate tier of judicial power between the open-gate response to fully accrued claims and the closed-gate response to anything less than that. The boundaries of this tier of justiciability, however, have well recognized limits.

The Act makes clear that it does not authorize courts to "render advisory opinions, to decide moot questions, or to answer inquiries that are merely speculative." *USAA Cas. Ins. v. Randolph*, 255 Va. 342, 346 (1998). No declaratory-judgment action can be adjudicated except "in cases of 'actual controversy'" involving an actual "'antagonistic assertion and denial of

---

[1] *See, e.g.*, Code § 8.01-364 (interpleader statute); Code § 55.1-123 (quiet title statute); *Harbour v. SunTrust Bank*, 278 Va. 514, 517 (2009) (discussing trustee suit for aid and guidance).

[2] *See generally* Kent Sinclair & Leigh B. Middleditch, Jr., Virginia Civil Procedure § 3.10, at 361-75 (7th ed. 2020) (discussing declaratory relief); Martin P. Burks, Common Law and Statutory Pleading and Practice § 192, at 309 (T. Munford Boyd, ed., 4th ed. 1952) (discussing the history and purpose of the Declaratory Judgment Act).

right.'" *Id.* at 345 (quoting Code § 8.01-184); *see also Erie Ins. Grp. v. Hughes*, 240 Va. 165, 170 (1990). This limiting principle polices the boundaries of the "constitutionally vested 'judicial power'" authorized by Article VI, Section 1 of the Constitution of Virginia. *Godlove v. Rothstein*, 300 Va. 437, 439 (2022).

Even when this threshold showing has been made, prudential principles caution against the misuse of this valuable judicial remedy. Declaratory-judgment actions, for example, cannot be employed as "instruments of procedural fencing, either to secure delay or to choose a forum," *Williams v. Southern Bank of Norfolk*, 203 Va. 657, 662 (1962), or as a means of deciding a mere "disputed fact" rather than a judicial declaration of legal "rights, status, and other relations, commonly expressed in written instruments," *Board of Supervisors of Loudoun Cnty. v. Town of Purcellville*, 276 Va. 419, 435 (2008) (citation omitted); *Green v. Goodman-Gable-Gould Co.*, 268 Va. 102, 107 (2004) (citation omitted). Nor can a declaratory-judgment action be used to avoid "some other mode of proceeding" specifically provided for resolving such disputes, *Liberty Mut. Ins. v. Bishop*, 211 Va. 414, 421 (1970); *see also USAA Cas. Ins.*, 255 Va. at 347, or to displace the "customary processes of the court" when the putative "right has matured" and the "wrong has been suffered," *American Nat'l Bank & Tr. Co. of Danville v. Kushner*, 162 Va. 378, 386 (1934).[3]

Despite these limitations, the Declaratory Judgment Act's efficacy remains strong and resilient. The Act permits the exercise of judicial power over a host of "actual antagonistic assertion[s] and denial[s] of right[s]" even though no "consequential relief" is claimed at the time of the dispute. Code § 8.01-184. Given its "remedial" nature, the Act "afford[s] relief from the

---

[3] *See also Cherrie v. Virginia Health Servs., Inc.*, 292 Va. 309, 318 (2016); *Board of Supervisors of Prince William Cnty. v. Hylton Enters., Inc.*, 216 Va. 582, 585 (1976); *Liberty Mut. Ins.*, 211 Va. at 419-20.

uncertainty and insecurity attendant upon controversies over legal rights, without requiring one of the parties interested so to invade the rights asserted by the other as to entitle him to maintain an ordinary action therefor." *Hoffman Fam., L.L.C. v. Mill Two Assocs. P'ship*, 259 Va. 685, 693 (2000) (quoting Code § 8.01-191).  When prudently entered, declaratory judgments "guide parties in their future conduct in relation to each other, thereby relieving them from the risk of taking undirected action incident to their rights, which action, without direction, would jeopardize their interests." *Miller v. Highland Cnty.*, 274 Va. 355, 370 (2007) (citation omitted); *see also Board of Supervisors of Loudoun Cnty.*, 276 Va. at 436.

B.

Our cases have struggled to find the case-specific equilibrium where a declaratory-judgment action serves its intended purpose without going too far or not going far enough. "Naturally, some perspicacity is required to determine whether such danger [to one's legal rights] is hypothetical or imaginary only or whether it is actual and material." *Reisen v. Aetna Life & Cas. Co.*, 225 Va. 327, 335 (1983) (citation omitted).  The circuit court in this case considered the continuing dispute between Ames and SOHO about the scope of Section 24.01 to be more hypothetical or imaginary than actual and material.  *See* J.A. at 218, 237-39, 244-45.  Several uncontradicted facts, however, lead us to conclude otherwise.

Ames claimed that Section 24.01 grants Ames a right to enter onto SOHO's property and to perform specific actions in support of Ames's contemplated building operations.  These actions included excavating the common boundary lines between the properties and using a "tower crane" that would move "construction equipment, materials and supplies" over SOHO's airspace.  *See id.* at 118.  These activities were necessary to prepare the required "engineering and architectural plans" in support of "permit requests" for the ultimate construction work.  *Id.*

7

SOHO made clear from the beginning that it disagreed with everything Ames had asserted and even threatened to initiate criminal trespassing charges and to seek civil tort damages if anyone from Ames crossed the boundary line between the properties. *See id.* at 79. In the court proceedings below, SOHO denied that Ames was a third-party beneficiary and that Ames had any rights under the ground lease. After the court rejected those arguments and asked for the parties to provide a status report, SOHO reported that it disagreed with Ames's interpretation of Section 24.01 and demanded a jury trial to challenge it. Tellingly, SOHO suggested that the trial should take place only after Ames had presented "concrete plans" showing the "exact extent" of any work on SOHO's property. *See id.* at 119. At no point, however, did SOHO assert in its status report that the case should be dismissed without any judicial decision on the competing interpretations of Section 24.01. During a later hearing on the status of the case, the circuit court asked SOHO to state the nature of its opposition to Ames's interpretation of Section 24.01. Upon hearing SOHO's argument, the court described it as "almost as clear as mud." *Id.* at 234.

Having read the transcript of the circuit court hearing, reviewed SOHO's appellate brief, and engaged SOHO's counsel during oral argument, we believe a common theme holds together SOHO's less-than-clear interpretation of Section 24.01: Ames has no right to conduct either of the two actions that Ames seeks to do on SOHO's land (excavation or crane work) without first obtaining "a permit, a permission, an easement" or some other "negotiated" agreement authorizing such operations, *id.* at 233. This view directly contradicts Ames's claim that Section 24.01, by itself and without any other legal authorization, entitles Ames to perform the excavation and crane work it deems necessary.

The parties' dispute over the meaning of Section 24.01 involves an "actual controversy" arising out of an "actual antagonistic assertion and denial of right[s]" pursuant to Code § 8.01-184. It is within the scope of the circuit court's exercise of its "constitutionally vested 'judicial power,'" *Godlove*, 300 Va. at 439, and does not offend any of the prudential principles limiting the exercise of the court's declaratory-judgment jurisdiction. We offer no opinion on the merits of the competing interpretations of Section 24.01 and leave that decision in the hands of the circuit court on remand. Our opinion also does not take away the circuit court's discretion on the proper sequencing of this determination or the court's decision to either empanel a jury or to decide the issue as a matter of law. Because we are "a court of review, not of first view," *California Condo. Ass'n v. Peterson*, ___ Va. ___, ___, 869 S.E.2d 893, 897 (2022) (citation omitted), the only error we are correcting is the court's sua sponte dismissal of this declaratory-judgment action as nonjusticiable. All other issues on remand are committed to the circuit court to decide in the first instance.

### III.

In sum, the circuit court erred in holding that no justiciable dispute existed between the parties following the court's holding that Ames qualified as a third-party beneficiary of the 1973 ground lease. We vacate the court's dismissal order and remand the case for further proceedings consistent with this opinion.

*Reversed and remanded.*

9